# EXHIBIT 1

Mitchell J. Klein (#007430)
mjklein@polsinelli.com
Anthony W. Merrill (#022598)
amerrill@polsinelli.com
Tiffany J. Andersen (#025269)
tandersen@polsinelli.com
**POLSINELLI SHUGHART PC**
CityScape Plaza
One E. Washington St., Ste. 1200
Phoenix, AZ 85004
Phone: (602) 650-2000
Fax: (602) 264-7033

*Attorneys for Plaintiff Nammo Talley, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nammo Talley, Inc., | Case No. 2:11-CV-01007-GMS |
| Plaintiff, | |
| vs. | **PLAINTIFF NAMMO TALLEY'S ANSWERS TO DEFENDANTS' FIRST SET OF JOINT INTERROGATORIES** |
| Allstate Insurance Company (solely as successor in interest to Northbrook Excess and Surplus Insurance Company); Continental Casualty Company; Globe Indemnity Company; National Union Fire Insurance Company of Pittsburgh, PA; Transportation Insurance Company; ABC Corporations; and XYZ Companies, | (Assigned to the Honorable G. Murray Snow) |
| Defendants. | |

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Nammo Talley, Inc. ("Nammo Talley"), by and through counsel undersigned, hereby answers Defendant Insurers' First Set of Interrogatories ("First Interrogatories") as follows. Discovery regarding the issues involved in these First Interrogatories remains ongoing. Nammo Talley has not completed its investigation of all the facts relating to this case, nor has it completed its discovery or preparation for trial. There may exist additional facts, information, or documents not yet known to or discovered by Nammo Talley, or whose relevance, significance, or applicability has not yet been determined.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1   Accordingly, Nammo Talley reserves the right to supplement or amend these Responses
2   and Objections.   Moreover, Nammo Talley reserves the right to supplement this
3   discovery response and offer and/or rely at trial on subsequently discovered information
4   or documents, or on information omitted from these Responses as a result of a good
5   faith oversight, error, or mistake.

## GENERAL OBJECTIONS

7       Nammo Talley generally objects to Defendant Insurers' First Interrogatories on
8   the grounds listed below.  Additionally, Nammo Talley hereby objects to any obligation
9   imposed by the First Interrogatories that is more restrictive or expansive, or otherwise
10   does not comport with the applicable Federal Rules and/or Local Rules governing
11   discovery.   Nammo Talley submits these First Interrogatories without conceding the
12   relevancy or materiality of any information produced in response to the First
13   Interrogatories. Nammo Talley reserves all rights to further object or otherwise respond
14   to the First Interrogatories, either generally or specifically.

15       1.    Nammo Talley's specific objections to each Interrogatory are in addition
16   to these General Objections.  The General Objections form part of Nammo Talley's
17   specific Response to each and every Interrogatory, and are set forth here to avoid
18   unnecessary duplication and repetition.   Thus, the failure to reference a General
19   Objection in a specific Response does not waive the General Objection with respect to
20   the specific Interrogatory.

21       2.    Nammo Talley objects to each and every Interrogatory to the extent it
22   attempts to impose obligations on Nammo Talley in addition to or in excess of those
23   authorized by the Federal Rules, the Local Rules, and/or any other applicable rules or
24   orders. Nammo Talley will comply with the Federal Rules and Local Rules.

25       3.    Nammo Talley objects to the overall breadth and number of
26   Interrogatories as unduly burdensome.  Many of the Interrogatories make sweeping

27
28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1    requests for broad, vaguely defined categories of information or request "all" documents
2    potentially related to broad, vaguely defined topics.

3        4.    Nammo Talley objects to the First Interrogatories insofar as they require
4    "all facts" or "all information," on the grounds that such a request is unreasonable and
5    unduly burdensome.

6        5.    Nammo Talley objects to each and every Interrogatory to the extent it is
7    vague, overly broad, unduly burdensome, and/or seeks information that is neither
8    relevant to the claims or defenses in this action nor reasonably calculated to lead to the
9    discovery of admissible evidence.

10       6.    Nammo Talley objects to each and every Interrogatory to the extent it
11   seeks information already known to Defendant Insurers or equally available to
12   Defendant Insurers from information found in Defendant Insurers' claims files,
13   information previously provided to Defendant Insurances by Nammo Talley, or
14   additional sources other than Nammo Talley.  This objection includes, but is not limited
15   to, documents and information already provided to Defendant Insurers as part of the
16   insurer/insured relationship and/or information contained in publicly-available records.
17   The burden of obtaining this information is the same for Defendant Insurers as it is for
18   Nammo Talley.

19       7.    Nammo Talley objects to each and every Interrogatory to the extent it is
20   not limited to information and documents within Nammo Talley's possession, custody
21   or control, or seeks information and documents that are in the possession, custody or
22   control of third parties, including but not limited to Defendant Insurers or any other
23   insurer of Nammo Talley.

24       8.    Nammo Talley objects to each and every Interrogatory to the extent it is
25   unduly duplicative, cumulative, or repetitive.

26       9.    Nammo Talley objects to each and every Interrogatory to the extent it
27   purports to require Nammo Talley to provide information or documents that in whole or

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1    in part are:  (i) trial preparation materials or protected work product; (ii) protected by

2    the attorney-client privilege or other privilege(s); or (iii) materials that Nammo Talley,

3    by law or agreement, is required to maintain in confidence.

4          10.   Nammo Talley objects to each and every Interrogatory to the extent it

5    seeks responses that would require Nammo Talley to disclose trade secrets, sensitive,

6    and/or confidential business information.

7          11.   Nammo Talley objects to each and every Interrogatory to the extent it

8    seeks documents or information that is confidential and proprietary and neither relevant

9    to the subject matter of this litigation nor reasonably likely to lead to the discovery of

10   admissible evidence.

11         12.   Nammo Talley objects to each and every Interrogatory to the extent that it

12   seeks a response concerning claims, sites, properties, injuries, occurrences, and/or time

13   periods not at issue in this litigation.

14         13.   Nammo Talley objects to each and every Interrogatory to the extent that it

15   calls for a legal conclusion.

16         14.   Nammo Talley objects to each and every Interrogatory to the extent that it

17   seeks responses that would require Nammo Talley to violate any court order or court

18   approved confidentiality agreement.

19         15.   Nammo Talley objects to each and every Interrogatory to the extent that it

20   incorporates any of Defendant Insurers' objectionable definitions.

21         16.   Nammo Talley objects to each and every Interrogatory to the extent that it

22   calls for responses equally available to Defendant Insurers.

23         17.   Nammo Talley objects to each and every Interrogatory as premature,

24   given that discovery is incomplete and ongoing.

25         18.   Nammo Talley objects to each and every Interrogatory to the extent that it

26   improperly calls upon Nammo Talley to organize, categorize, and characterize

27

28   **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1   information or documents already produced and/or information contained in publicly-

2   available records.

3       19.   Nammo Talley objects to each and every Interrogatory as improperly and

4   prematurely purporting to impose an obligation to prepare and disclose expert opinions,

5   trial exhibits and/or summary judgment exhibits.

6       20.   Nammo Talley objects to each and every Interrogatory to the extent that it

7   seeks to shift the burden of proof regarding the application of certain policy exclusions

8   and/or defenses from Defendant Insurers to Nammo Talley.

9       21.   Nammo Talley objects to the First Interrogatories' definition of

10  "ENVIRONMENT" as overly broad in that it denotes information that is neither

11  relevant to the claims or defenses in this action nor reasonably calculated to lead to the

12  discovery of admissible evidence.   Nammo Talley further objects to the First

13  Interrogatories' definition of "ENVIRONMENT" as vague in that it contains numerous

14  terms which themselves are vague and undefined in the First Interrogatories (e.g.,

15  "drinking water supply") and/or duplicative (e.g., "well water").

16      22.   Nammo Talley objects to the First Interrogatories' definition of

17  "GOVERNMENT AGENCY" as overly broad in that it denotes information that is

18  neither relevant to the claims or defenses in this action nor reasonably calculated to lead

19  to the discovery of admissible evidence.

20      23.   Nammo Talley objects to the First Interrogatories' definition of

21  "INSURANCE POLICIES" or "INSURANCE POLICY" as overly broad to the extent

22  it includes insurance policies not at issue in this litigation.

23      24.   Nammo Talley objects to the First Interrogatories' definition of

24  "NAMMO TALLEY," "YOU," and "YOUR" to the extent it mischaracterizes the

25  corporate history and/or structure of Nammo Talley.

26      25.   Nammo Talley objects to the First Interrogatories' definition of

27  "OCCURRENCE," "PROPERTY DAMAGE," and "PERSONAL INJURIES" as vague

28  **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

5

and misleading in that the insurance policies at issue in this litigation contain divergent definitions of such terms.

26.     Nammo Talley objects to the First Interrogatories' definition of "POLLUTANT" as overly broad in that it denotes information that is neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence.   The First Interrogatories' definition of "POLLUTANT" is so overly broad that any substance could conceivably meet asserted the definition of "POLLUTANT." Nammo Talley further objects to the First Interrogatories' definition of "POLLUTANT" as vague in that it contains numerous terms which themselves are vague and undefined in the First Interrogatories.   For purposes of the First Interrogatories, Nammo Talley will construe "POLLUTANT" as meaning lead and/or perchlorate.

27.     Nammo Talley objects to the First Interrogatories' definition of "SITE" to the extent that it mischaracterizes the operational history, operations, and/or characteristics of Nammo Talley's facility located in Mesa, Arizona.

## ANSWERS TO SPECIAL INTERROGATORIES

1.     IDENTIFY every DOCUMENT or COMMUNICATION that establishes, memorializes, or RELATES TO a legal obligation (whether imposed by law or assumed in a contract or agreement) on the part of NAMMO TALLEY to pay damages on account of PERSONAL INJURIES or PROPERTY DAMAGE in connection with the SITE.

**ANSWER:**

In addition to the General Objections above, Nammo Talley specifically objects to this Interrogatory as overly broad and unduly burdensome, as it improperly asks for "every" document or communication that even "relates to" Nammo Talley's obligation to pay damages in connection with its facility located in Mesa, Arizona (the "Site"). Such a broad request would literally include every document that has been or will be

## CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

6

produced in this matter, and Nammo Talley specifically incorporates by reference every such document into its Response.  Nammo Talley further objects to this Interrogatory to the extent it seeks information already known to Defendant Insurers or equally available to Defendant Insurers from sources other than Nammo Talley, including but not limited to information contained in pleadings, briefs, documents already produced, previous disclosures, other discovery in this matter, and public documents.  Nammo Talley also objects to this Interrogatory to the extent it seeks information protected from disclosure, whether by the attorney-client privilege, the work product doctrine, or other applicable privilege or exemption.  Additionally, Nammo Talley objects to this Interrogatory to the extent it implies that Nammo Talley paid damages on account of personal injuries in connection with the Site.

Subject to and without limiting its General and specific objections, Nammo Talley states that, among every other document that has been or will be produced in this case, Nammo Talley's revised Part B Permit under the Resource Conservation and Recovery Act ("RCRA"), including the closure obligations under that permit, and pending/draft Aquifer Protection Program ("APP") Permit, including demands and mandates of the Arizona Department of Environmental Quality ("ADEQ"), establish its legal obligations relating to the environmental remediation and investigation at the Site. Further, in addition to verbal directives from ADEQ, the following documents and communications, and information and discussions referenced therein, further demonstrate Nammo Talley's legal obligation to pay damages on account of property damage relating to the Site:

• September 3, 1991 letter from James Skardon (Assistant Attorney General) to Judge Alfred Rogers.  [NT-000248 - 81].

• Consent Judgment affirmed on September 6, 1991.  [NT-000248 – 81].

• March 15, 1994 letter from ADEQ to Nammo Talley regarding changes to the SAP.  [NT-000047 - 50].

<u>**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**</u>

7

1      •      RCRA Facility Assessment. [NT-065515 – 5639].

2      •      Nammo Talley's July 11, 1994 Response to RCRA Facility Assessment.

3 [NT-005690 - 5732].

4      •      March 28, 1995 letter from ADEQ to Nammo Talley regarding additional

5 comments to the SAP. [NT-000051 - 52].

6      •      APP Permit closure application and sampling plan for the Water Bore-Out

7 ("WBO") facility, submitted on June 14, 1996. [NT-000054 - 78]

8      •      June 24, 1996 meeting with both the compliance and APP units of ADEQ.

9 [NT-044163- 77].

10      •      Draft response to the APP closure application and sampling plan dated

11 July 25, 1996. [NT-044163- 77].

12      •      July 30, 1996 letter from Nammo Talley to ADEQ. [NT-046683 - 84].

13      •      November 14, 1996 letter from ADEQ. [NT-046093 - 94].

14      •      December 2, 1996 oral communications with the ADEQ APP unit. [NT-

15 044163- 77].

16      •      December 3, 1996 oral communications with the ADEQ APP unit. [NT-

17 044163- 77].

18      •      Sampling report and request for closure of WBO facility, submitted to

19 ADEQ on March 3, 1997. [NT-044163- 77].

20      •      October 23, 1997 communication from Nammo Talley to ADEQ

21 requesting that the fencing around the WBO facility be allowed to be removed. [NT-

22 033912].

23      •      Letter from ADEQ to Nammo Talley dated December 2, 1997. [NT-

24 033966 - 68].

25      •      January 19, 1998 letter from Nammo Talley to ADEQ. [NT-034116].

26      •      April 1, 1998 letter from the ADEQ compliance unit. [NT-044163- 77].

27      •      April 23, 1998 letter from ADEQ's APP unit. [NT-044163– 77].

28      **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1 • May 11, 1998 letter from Nammo Talley. [NT-044163– 77].

2 • Nammo Talley's response to the ADEQ review of the WBO sampling

3 report, dated May 28, 1998. [NT-044163– 77].

4 • July 20, 1998 letter from the Arizona State Land Department to ADEQ

5 regarding WBO pits. [NT-000053].

6 • Nammo Talley's notification to the ADEQ APP unit of its plan to remove

7 soil, dated June 22, 1999. [NT-043324].

8 • Sample results and Closure Report submitted to ADEQ on August 6,

9 1999. [NT-073573 - 87].

10 • May 23, 2000 Letter from ADEQ to Donovan Jones regarding draft APP

11 Permit. [NT-043732 – 48].

12 • July 5, 2000 meeting between Nammo Talley and ADEQ (Lupe Buys and

13 Dennis Clayton). [NT-009823 - 26].

14 • August 31, 2000 letter from Marnie Greenbie (ADEQ) to Donovan Jones

15 (Nammo Talley), containing the original WBO APP Permit. [NT-000054 - 78].

16 • Final closure approval on the WBO from ADEQ dated September 4,

17 2000. [NT-003333 - 3479].

18 • Responsiveness Summary for Aquifer Protection Permit No. P-101370.

19 [NT-000055 -63].

20 • Executive Summary of Aquifer Protection Permit No. P-101370. [NT-

21 000064 - 67].

22 • Aquifer Protection Permit No. P-101370. [NT-000068 -78].

23 • Letter from ADEQ to Nammo Talley regarding remedial action plan for

24 partial closure of Thermal Treatment Unit ("TTU"), dated March 19, 2002. [NT-

25 000079 - 80].

26 • July 25, 2007 letter from Nammo Talley to ADEQ requesting to begin

27 additional post-closure activities. [NT-000098 - 101].

28 **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

9

1  •  Letter from Nammo Talley to ADEQ regarding permit amendment
2  application for significant amendment of APP Permit No. P-101370, dated December
3  10, 2007.  [NT-000081 - 102].

4  •  Letter from ADEQ to Nammo Talley dated April 30, 2008, containing
5  notice of deficiency.  [NT-000117 - 168].

6  •  September 25, 2008 letter from Spencer York (ADEQ) to Susan
7  Kobyleski (Nammo Talley) regarding APP amendment request.  [NT-000169 - 171].

8  •  Insurance Claim Information Report dated October 22, 2008.  [NT-
9  003333 - 3479].

10  •  November 24, 2008 letter from Brown & Caldwell to Spencer York
11  (ADEQ).  [NT-000103 - 108].

12  •  December 4, 2008 letter from ADEQ to Nammo Talley containing
13  comments to Final Closure Plan for TTU.  [NT-000112 - 116].

14  •  December 11, 2008 monitoring well notice of intent from Nammo Talley.
15  [NT-000109 - 111].

16  •  April 3, 2009 letter from ADEQ containing additional comments to Final
17  Closure Plan for TTU.  [NT-000179 - 182].

18  •  June 24, 2009 letter from ADEQ regarding site characterization activities
19  for Final Closure Plan for TTU.  [NT-000183 - 188].

20  •  August 24, 2009 letter from Brown & Caldwell to ADEQ containing the
21  groundwater investigation status report for APP No. P-101370.  [NT-002749 - 2805].

22  •  September 29, 2009 letter from Nammo Talley to ADEQ providing a
23  status update on the site characterization work performed at the TTU.  [NT-000172 -
24  173].

25  •  October 1, 2009 Work Plan for Pilot Test of Perchlorate Bioremediation.
26  [NT-003129 - 88].

27

28
**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

10

1      • October 19, 2009 letter from ADEQ regarding schedule for submittal of

2    Revised Final Closure Plan [NT-000172 - 173].

3      • October 30, 2009 Summary of Initial Soil Characterization Activities at

4    the TTU. [NT-000174 - 176].

5      • November 20, 2009 Update to Summary of Initial Soil Characterization

6    Activities at the TTU. [NT-000174 - 176].

7      • Draft APP Amendment Permit received from ADEQ in November 2009.

8    [NT-044155 - 56; NT-044158 - 320].

9      • Draft APP Amendment Fact Sheet received from ADEQ in November

10   2009 [NT-002276 - 91].

11      • December 24, 2009 letter from ADEQ providing comments to the

12   Summary of Initial Soil Characterization Activities at the TTU. [NT-000174 - 178].

13      • January 8, 2010 letter from Daniel V. Haun to ADEQ. [NT-003932 - 37].

14      • January 31, 2010 Compliance/Annual Post-Closure Progress Report.

15   [NT-000189 - 225].

16      • February 25, 2010 meeting between ADEQ and Nammo Talley. [NT-

17   003949 - 52].

18      • March 12, 2010 ADEQ Memorandum of minutes from meeting with

19   Nammo Talley on February 25, 2010. [NT-000226 - 29].

20      • March 24, 2010 letter from ADEQ providing comments in response to the

21   February 19, 2010 Brown & Caldwell report. [NT-000230 - 36].

22      • March 31, 2010 letter from ADEQ providing comments on the

23   Perchlorate Source Investigation Report dated June 2009. [NT-000237 - 41].

24      • September 10, 2010 letter from ADEQ regarding removal of lead

25   contaminated soil from the Storm Water Accumulation Area prior to Final Closure Plan

26   approval. [NT-000242 - 44].

27

28      **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

- February 2011 Perchlorate Remedial Action Work Plan. [NT-004187 - 4244].

- May 3, 2011 Letter from Daniel Haun to ADEQ. [NT-003973 – 76]

- November 2011 Nammo Talley Groundwater Investigation Sampling and Analysis Plan. [NT-004020 - 4164].

- March 20, 2012 letter from ADEQ to Daniel Haun regarding Groundwater Investigation Sampling and Analysis Plan. [NT-004007 - 08].

- March 20, 2012 letter from ADEQ to Daniel Haun regarding Compliance/Annual Post-Closure Progress Report. [NT-004011 - 13].

- March 25, 2012 letter from Nammo Talley regarding Plant No. 3 [NT-004176 - 86].

- Fact Sheet for Aquifer Protection Permit, Place ID #1407, LTF #46292. [NT-002276 - 91].

- Significant Amendment to Aquifer Protection Permit No. P-101370. [NT-002708 - 40].

- April 11, 2012 Closure Plan Thermal Treatment Unit. [NT-004729 - 5029].

- January 12, 2012 letter from ADEQ to Daniel Haun. [NT - 003985 - 92]

2.      For each legal obligation identified in YOUR response to Interrogatory No. 1, IDENTIFY the OCCURRENCE or OCCURRENCES that caused the PERSONAL INJURIES or PROPERTY DAMAGE for which YOU were liable. For the purpose of this Interrogatory, the term "IDENTIFY" shall mean to state:  (1) the date the "occurrence" took place; (2) the specific cause of the OCCURRENCE; (3) whether the OCCURRENCE involved continuous or repeated exposure to conditions; and (4) the specific amount of PERSONAL INJURIES or PROPERTY DAMAGE caused by each OCCURRENCE.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

12

**ANSWER:**

In addition to the General Objections above, Nammo Talley specifically objects to this Interrogatory to the extent it defines "occurrence" in any way other than as defined in the policies. The policies provide Nammo Talley with coverage for all sums it becomes legally obligated to pay as damages because of bodily injury caused by an occurrence, but nowhere require Nammo Talley to show the "specific cause" of an occurrence. Nammo Talley further objects to this Interrogatory as irrelevant and as seeking expert opinions or otherwise seeking to impose obligations on Nammo Talley in addition to or in excess of those authorized by the Federal Rules of Civil Procedure and/or any other applicable rules or orders. Additionally, Nammo Talley objects to this Interrogatory to the extent it seeks information already known to Defendant Insurers or equally available to Defendant Insurers from sources other than Nammo Talley, including but not limited to information contained in their claims files, pleadings, briefs, documents already produced, previous disclosures and other discovery in this matter. Nammo Talley also objects to this Interrogatory to the extent it seeks a legal conclusion.

Subject to and without limiting its General and specific objections, Nammo Talley states that its historic manufacturing operations unexpectedly and unintentionally resulted in lead and perchlorate contamination at the Site and off-site at neighboring properties. In order to prevent and/or reduce off-site migration of contaminants, ADEQ, a governmental third party, has required Nammo Talley to investigate and remediate this contamination. ADEQ has current regulatory authority under the closure obligations at Nammo Talley's RCRA Part B Permit, the APP, and A.R.S. § 49-241, *et seq.* to compel through enforcement actions (which ADEQ has constantly threatened) the remediation of both contaminated soil and groundwater at the Site. In general terms, the reasonable and necessary investigation and remediation costs for which Nammo Talley seeks insurance coverage arise out of two unique occurrences at the facility – the

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1   WBO and the TTU.  Those two occurrences, which involved continuous or repeated

2   exposure to conditions, are more fully described as follows:

**WBO Perchlorate Contamination**

4       Nammo Talley is an aerospace company that, at the time of the occurrences

5   comprising its current coverage claims, generally designed, developed, and

6   manufactured aircraft escape rocket motors and rocket catapults for emergency escape

7   and survival systems, and other products related to the aerospace and military industries.

8   An integral part of Nammo Talley's business operations from the early 1960s to

9   October 1990 required Nammo Talley to replace the propellant found in aged, yet-to-be

10  used missiles and other rocket motors it manufactured and sold.  Accordingly, rocket

11  motors that required service were bored out in the WBO using industrial process waters

12  to remove solid propellant containing ammonium perchlorate from rocket motors

13  designed for military use.  The rocket motors were then "relifed," meaning they had

14  their metal components reconditioned and refilled with fresh propellant. [1]

15      During the applicable policy periods, and in accordance with the standard and

16  state of the art industry practice at the time, Nammo Talley discharged the water used in

17  this operation, after it was treated through screening and then with secondary recovery

18  techniques to collect and remove all solids to unlined evaporation ponds.  The water and

19  some dissolved materials (though unknown at the time) generated by this process were

---

[1]  The WBO is located near the eastern boundary of the East Salt River Valley
Groundwater Basin of the Salt River Valley.  The primary source of groundwater in the
basin is the thick sequences of basin-fill alluvial sediments which have been divided
into the Upper Alluvial Unit and the Lower Conglomerate Unit.  Groundwater from the
regional basin-fill sediments is used for irrigation, industrial, and municipal supply
purposes.  No population centers are located in the immediate vicinity of the WBO;
however, residential communities are located approximately 0.75 miles east and 1.36
miles southwest of the site.  Three miles southeast of the WBO (direction of the
groundwater) begins the high density residential neighborhoods, all of which are
supplied drinking water by the City of Mesa.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1    collected in Nammo Talley's Plant #3 water bore-out pits (unlined).   The discharges

2    ranged from 110,000 gal./year to 410,000 gal./year.

3        During this operation, the practice was considered safe, state of the art, and

4    environmentally-friendly as recapture of all solids was the intended and expected

5    resulted of the process.   Unfortunately and unexpectedly, some perchlorate did not

6    precipitate and therefore unexpectedly, and unknowingly, remained in the water and

7    leached from the ponds into the groundwater where it has impacted neighboring wells

8    off-site.

9        Perchlorate is a relatively new regulatory contaminant of concern that began to

10   be addressed by regulators approximately ten years ago when laboratory detection limits

11   for the substance dropped from approximately 400 parts per billion to 4 parts per

12   billion.  Although the appropriate regulatory standard has not yet been set by the United

13   States Environmental Protection Agency ("EPA"), several states have set their own

14   drinking water standards, and/or remedial standards, and have filed lawsuits and issued

15   administrative orders requiring remediation of perchlorate.     Arizona regulates

16   perchlorate through its APP, which prohibits discharges of pollutants, establishes soil

17   standards, and narrative water quality standards.   Pursuant to APP, ADEQ has the

18   regulatory authority to address any discharge of pollutants in an aquifer that impairs

19   existing or reasonably foreseeable uses of water in an aquifer, such as the asserted

20   impairment of the groundwater near the Site for use as drinking water.

21       Perchlorate contamination has been detected in stormwater samples, soil

22   samples, and groundwater samples at and around the Site.   The WBO is the primary

23   source of perchlorate contamination. Nammo Talley has incurred approximately

24   $1,887,338.81 in costs in connection with remediating perchlorate contamination at the

25   Site resulting from the WBO, and anticipates total past and future costs of between

26   $22,621,707.81 and $29,135,607.81 to address the property damage caused by this

27   occurence.

28        **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

## TTU Contamination

From approximately 1966 to 2006, Nammo Talley burned waste materials at its TTU (or Burn Ground) in accordance with the terms of applicable permits and regulations, including interim permitted status under RCRA Part B.  During that time, and in some respects to this very day, thermal treatment constituted the best practice for safely disposing of explosive wastes.  The Burn Ground was established in an extremely remote location situated on granitic bedrock with a large firebreak.   The area was/is secure from public access.

In accordance with standard industry practice at the time, some materials were spread thinly and burned on bare soil.  The excessive temperatures of the TTU where fully expected to completely disintegrate all compounds, materials, minerals, and waste so treated.  Lead contamination of soil at the Site, and on neighboring properties, likely resulted unexpectedly from unknown incomplete disintegration of solid propellants containing lead nitrate, solid propellant containing small quantities of lead bearing chemical additives, and possibly from the detonation of lead styphnate.   Other propellants burned at the Site, including perchlorate based materials, may have unintentionally caused additional contamination.

As required by regulation, the TTU or Burn Ground, will undergo regulatory "closure."  Contaminated soil has been remediated on several occasions at Nammo Talley's TTU.  For example, in mid-1995, Nammo Talley restricted the treatment of explosives containing RCRA metals and conducted an extensive Site Assessment/Sampling Plan (SAP) to determine the extent of contamination.  Several SAPs and lead remediation projects were conducted at the site prior to 1995, but this was the definitive SAP to determine required actions prior to site closure.  Since that report, remedial activities at the site have included (1) soil stabilization; (2) excavation and disposal at an off-site permitted landfill; (3) risk assessments; and (4) perchlorate groundwater monitoring well installation.

## CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

16

1   In early 2008, Nammo Talley formally advised ADEQ that it would no longer
2   need to open-burn waste propellant on-site, but would instead dispose of it at an off-site,
3   EPA regulated, TTU facility.   Nammo Talley presented ADEQ with a Formal Closure
4   Plan, subject to their review and approval.   The Closure Plan includes an extensive
5   Sampling Plan to identify, measure and address remaining contaminants existing in the
6   soil.   As part of that Plan, ADEQ required Nammo Talley to construct, design, and
7   install a groundwater monitoring well off-site, north of the Burn Ground.   In mid-June
8   2012 that well detected perchlorate contamination in the groundwater, the existence of
9   which was previously unknown to Nammo Talley.

10   Nammo Talley has incurred approximately $966,418.03 in costs in connection
11   with remediating lead contamination at the Site, and anticipates total past and future
12   costs of between $2,342,732.64 and $3,072,132.64.   Additionally, the perchlorate
13   recently discovered (for the first time) in the groundwater north of the Burn Ground will
14   significantly increase Nammo Talley's projected future costs for closure and
15   groundwater cleanup, which at present are unknown.

16   3.   For each OCCURRENCE identified in YOUR responses to Interrogatory
17   No. 2, IDENTIFY when you first provided notice to each DEFENDANT INSURER of
18   that OCCURRENCE.   For the purpose of this interrogatory, the term "IDENTIFY"
19   means to state:   (1) the date on which notice was given; (2) whether notice was given
20   orally or in writing; (3) the PERSON who provided notice on behalf of NAMMO
21   TALLEY; and (4) the PERSON to whom notice was given.

22   **ANSWER:**

23   In addition to the General Objections above, Nammo Talley objects to this
24   Interrogatory to the extent it seeks information already known to Defendant Insurers or
25   equally available to Defendant Insurers from sources other than Nammo Talley,
26   including but not limited to information contained in pleadings, briefs, documents
27   already produced, previous disclosures and other discovery in this matter.

28   **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1   Subject to and without limiting its General and specific objections, Nammo
2   Talley states that it provided written notice to its primary carriers on May 24, 1995, and
3   provided a renewed notice on August 21, 2006.  [See 8/21/06 Facsimile from Michael
4   S. Head (AJG), Bates No. NT-003287; 8/21/09 letter from Hassan Mirza (Nammo
5   Talley) to Theresa A. Dickey (Allstate), Bates Nos. NT-002385 - 86 (stating that
6   "[t]imely notice was given as soon as practicable, which was a few years ago");
7   5/24/1995 Letter from Charles L. Lorenz to Rick Ehlers (CNA), Bates Nos. NT-003242
8   - 44].  Nammo Talley provided notice to its excess carriers by at least October 22, 2008.
9   [See Letter from Charles Lorenz (Bates Nos. NT-003333 - 34)].

10   4.   IDENTIFY all payments made by YOU for damages because of
11   PERSONAL INJURIES or PROPERTY DAMAGE for which YOU are seeking
12   coverage from the DEFENDANT INSURERS in the COMPLAINT.  For the purpose of
13   this interrogatory, the term "IDENTIFY" means to state:   (1) the amount of the
14   payment; (2) the date the payment was made; and (3) the nature and purpose of the
15   payment.

16   **ANSWER:**

17   In addition to the General Objections above, Nammo Talley objects to this
18   Interrogatory to the extent it seeks information already known to Defendant Insurers or
19   equally available to Defendant Insurers from sources other than Nammo Talley,
20   including but not limited to information contained in pleadings, briefs, documents
21   already produced, previous disclosures and other discovery in this matter.

22   Subject to and without limiting its General and specific objections, Nammo
23   Talley states that it made payments because of property damage as follows:

24   **WBO Perchlorate Contamination**

25   Nammo Talley made payments because of property damage with respect to
26   WBO perchlorate contamination as set forth in the November 2010 Cost
27   Actual/Estimate for Historical WBO Perchlorate Contamination & Remediation at

28   **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

18

paragraphs nos. 1-12 and 14-17 (<u>see</u> Bates Nos. NT-000403 - 11) and in the documents with Bates Nos. NT-000353 - 86, and as updated in June 2012. Individual invoices and other documents providing additional detail, which have been produced to Defendant Insurers, can be found at Bates Nos. NT-000578 - 884, NT-001012 - 1129, and as updated in June 2012. [NT-083661 - 3703]. Nammo Talley will also incur future defense costs for property damage associated with the WBO for which it seeks recovery from Defendant Insurers.

<strong>TTU Contamination</strong>

Nammo Talley made payments because of property damage with respect to TTU lead contamination as set forth in the November 2010 Cost Estimate for Historical Lead Contamination & Remediation (<u>see</u> Bates Nos. NT-000399 - 402) and in the documents with Bates Nos. NT-000327 - 52 and, as updated in June 2012. [NT-005267 - 71]. Individual invoices and other documents providing additional detail can be found at Bates Nos. NT-000412 - 577 and, as updated in June 2012. [NT-005272 - 5304]. Nammo Talley will also incur future defense costs for property damage at the TTU for which it seeks recovery from Defendant Insurers.

5. IDENTIFY each defense cost (as that term is used by YOU in the COMPLAINT) for which YOU are seeking payment or reimbursement from the DEFENDANT INSURERS in the COMPLAINT. For the purpose of this interrogatory, the term "IDENTIFY" means to state: (1) the specific suit for which the defense cost was incurred; (2) the date of the defense cost was incurred; (3) the date the defense cost was paid; (4) the entity who performed the services paid for; (5) the nature and purpose of such services; and (6) whether YOU were reimbursed by any insurer or other entity for such cost.

**ANSWER:**

In addition to the General Objections above, Nammo Talley objects to this Interrogatory to the extent it seeks information already known to Defendant Insurers or

<u><strong>CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER</strong></u>

1    equally available to Defendant Insurers from sources other than Nammo Talley,

2    including but not limited to information contained in pleadings, briefs, documents

3    already produced, previous disclosures and other discovery in this matter.   Nammo

4    Talley further objects to this Interrogatory as overly broad, unduly burdensome, and to

5    the extent it seeks to impose limitations on recovery not found in the insurance policies.

6          Subject to and without limiting its General and specific objections, Nammo

7    Talley states that it has incurred the unreimbursed defense costs set forth in the

8    November 2010 Cost Actual/Estimate for Historical WBO Perchlorate Contamination

9    & Remediation at Paragraph No. 13 (see Bates No. NT-000405) in defending against

10   actions by ADEQ with respect to the WBO, and as itemized at Bates Nos. NT-000367 -

11   69. Individual invoices and other documents providing additional detail can be found at

12   Bates Nos. NT-000885 - 1011 and in cost updates as of June 2012 [NT-005305 - 13].

13   Nammo Talley may also incur future defense costs for which it seeks recovery from

14   Defendant Insurers.

15         6.    For each payment and defense cost identified in YOUR response to

16   Interrogatory Nos. 4 and 5 that was paid by YOU, IDENTIFY when YOU requested

17   each DEFENDANT INSURER'S consent for YOUR payment of such cost.   For the

18   purpose of this interrogatory, the term "IDENTIFY" means to state:   (1) the date on

19   which the request was made; (2) whether the request was made orally or in writing; (3)

20   the PERSON who made the request on YOUR behalf; (4) the PERSON to whom the

21   request was made; and (5) whether each of the DEFENDANT INSURERS consented to

22   such payment.

23   **ANSWER:**

24         In addition to the General Objections above, Nammo Talley specifically objects

25   to this Interrogatory as overly broad and unduly burdensome to the extent it seeks to

26   have Nammo Talley break out communications by each individual payment.   Nammo

27   Talley further objects to this Interrogatory to the extent it seeks information already

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

known to Defendant Insurers or equally available to Defendant Insurers from sources other than Nammo Talley, including but not limited to information contained in pleadings, briefs, documents already produced, previous disclosures and other discovery in this matter. Additionally, Nammo Talley objects to the extent this Interrogatory seeks to impose limitations on recovery not found in the insurance policies.

Subject to and without limiting its General and specific objections, Nammo Talley states that it has continuously requested its insurers' participation and approval of costs through verbal and written updates regarding costs associated with remediating the WBO and TTU areas, as well as defense costs, since the time it noticed the insurers of potential claims. The renewed notice provided on August 21, 2006, had attached information regarding remediation costs and invited the insurers to provide their input. [See 8/21/06 Facsimile from Michael S. Head (AJG), Bates No. NT-003287]. In addition to numerous verbal and written communications through Chuck Lorenz and others (see, e.g., April 25, 2007 email from Young McWhirter acknowledging numerous phone calls and receiving a package that provided remediation estimates and other information (Bates No. NT-003311)), Nammo Talley also provided its insurers with extensive information and requested their approval regarding past and future costs in its Insurance Claim Information Report dated October 22, 2008. [Bates Nos. NT-003333 - 3479].

Despite these repeated requests, Nammo Talley had to prod its insurers into providing any kind of response to its communications regarding costs incurred and proposed future costs. For example, Nammo Talley provided its insurers with over two-hundred (200) pages of updated information regarding planned additional costs and consulting reports on August 21, 2009. [See Letter from Hassan Mirza to Timothy Minier (CNA) and Theresa Dickey (Allstate) dated August 21, 2009 (Bates Nos. NT-002385 - 2586)]. Two months later the insurers still had not responded, requiring Nammo Talley to explain that "we would like to move forward on this matter and

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

21

would appreciate responses, comments, and/or questions to our letter." [See, e.g., Letter from Hassan Mirza (Nammo Talley) to Timothy Minier (CNA) dated October 16, 2009 (Bates No. NT-002374)].

Even the insurers recognized that while they made their coverage determinations, "Nammo Talley must continue to act in its best interests as to this matter." [Letter from Timothy Minier (CNA) to Charles Lorenz dated September 6, 2006 (Bates Nos. NT-003288 -90)]. Moreover, Nammo Talley's insurers also made clear that, with respect to the excess policies, the do "not have a duty to defend against this claim nor do they respond, if at all, until all underlying coverage has been properly exhausted. Since the material forwarded to date does not indicate otherwise, we assume that underlying coverage remains available." [Letter from Theresa Dickey (Allstate) to Charles Lorenz dated November 14, 2008 (Bates Nos. NT-003480 - 83)].

7.    For each suit for which YOU are seeking a defense from the DEFENDANT INSURERS, IDENTIFY when you first requested a defense of that suit from each of the DEFENDANT INSURERS. For the purpose of this interrogatory, the term "IDENTIFY" means to state:  (1) the date on which the request was made; (2) whether the request was made orally or in writing; (3) the person who requested a defense on YOUR behalf; and (4) the person to whom the request was made.

**ANSWER:**

Subject to and without limiting its General Objections, Nammo Talley states that it requested a defense from CNA on May 24, 1995, as part of its original notice. [See Letter from Charles Lorenz to dated May 24, 1995 (stating that "[t]he notice given by ADEQ that TDS may be a responsible party for groundwater contamination in the Northeast Mesa WQARF area has triggered the insurers' duty to defend as set forth in Nammo Talley Industries' general liability policies"), Bates Nos. NT-003242 - 44]. Nammo Talley again requested a defense on August 21, 2006, by means of its renewed

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

notice and accompanying information attached to the facsimile sent by Michael Head. [NT-003287].

8.     IDENTIFY all facts upon which you rely for your allegation that each of the DEFENDANT INSURERS' INSURANCE POLICIES has a duty to defend NAMMO TALLEY and/or reimburse NAMMO TALLEY for its defense costs in connection with the SITE.

**ANSWER:**

In addition to the General Objections above, Nammo Talley specifically objects to this Interrogatory as overly broad and unduly burdensome, as it improperly asks for "all facts" demonstrating the primary carriers' duty to defend.  Such a broad request would literally include every fact in this case, and Nammo Talley specifically incorporates every such fact by reference.  Nammo Talley further objects to this Interrogatory to the extent it seeks information already known to Defendant Insurers or equally available to Defendant Insurers from sources other than Nammo Talley, including but not limited to information contained in pleadings, briefs, documents already produced, previous disclosures and other discovery in this matter.

Subject to and without limiting its General and specific objections, Nammo Talley states that the primary policies have duty to defend provisions stating that "the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent." [Continental Casualty Policy No. CCP9021329R (1/1/73–1/1/75), Bates Nos. NT-001149 - 1230; see also Transportation Insurance Company Policies Nos. CCP2436424 (1/1/76-4/1/79), Bates Nos. NT-001906 - 2108, & CCP004724934 (4/1/79-4/1/81), Bates Nos. NT-001774 - 1905]. As set forth in Nammo Talley's Responses to Interrogatories Nos. 1 & 2, ADEQ has pursued years of aggressive and coercive threats in requiring Nammo Talley to incur remediation costs for occurrences that fall within the policies' coverage.  See

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1   Responses to Interrogatories Nos. 1 & 2; <u>Compass Ins. Co. v. Guaranty Nat'l Ins. Co.</u>,

2   984 P.2d 606, 621 (Col. 1999); <u>SCSC Corp. Allied Mut. Ins. Co.</u>, 536 N.W.2d 305

3   (Minn. 1995); <u>Mich. Millers Mut. Ins. Co. v. Bronson Plating Co.</u>, 519 N.W.2d 864,

4   869 (Mich. 1994); <u>Coakley v. Me. Bonding & Casualty Co.</u>, 618 A.2d 777 (N.H. 1992);

5   <u>A. Y. McDonald Indus. v. Ins. Co. of N. Am.</u>, 475 N.W.2d 607 (Iowa 1991); <u>Aetna</u>

6   <u>Casualty and Surety Co., Inc. v. Pintlar Corp.</u>, 948 F.2d 1507 (9th Cir. 1991).

7       9.      IDENTIFY all costs that YOU have incurred or expect to incur in order to

8   prevent PROPERTY DAMAGE or PERSONAL INJURIES caused by contamination at

9   or emanating from the SITE.   For the purpose of this interrogatory, the term

10  "IDENTIFY" means to state:  (1) the amount of the cost; (2) the date the cost was paid,

11  or is expected to be paid; (3) if the cost was for services rendered, the name of the entity

12  performing the services rendered and nature and purpose of such services; and (4) if the

13  cost was not for services rendered, the nature and purpose of the cost.

14  **ANSWER:**

15      In addition to the General Objections above, Nammo Talley objects to this

16  Interrogatory to the extent it seeks information already known to Defendant Insurers or

17  equally available to Defendant Insurers from sources other than Nammo Talley,

18  including but not limited to information contained in pleadings, briefs, documents

19  already produced, previous disclosures and other discovery in this matter.   Nammo

20  Talley further objects to this Interrogatory as unduly burdensome and not reasonably

21  calculated to lead to the discovery of admissible evidence.  The policies do not provide

22  for any different treatment regardless of whether Nammo Talley's liability that arose

23  from property damage was intended to prevent future property damage.

24      Subject to and without limiting its General and specific objections, Nammo

25  Talley refers Defendant Insurers to its Response to Interrogatories Nos. 2 & 4.

26      10.     IDENTIFY each allegedly false and misleading statement that YOU

27  allege was made by each DEFENDANT INSURER that induced NAMMO TALLEY to

28  **<u>CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER</u>**

purchase the DEFENDANT INSURERS' POLICIES.   For the purpose of this interrogatory, the term "IDENTIFY" means to state: (1) the PERSON who made the statement; (2) the PERSON or PERSONS to whom the statement was made; (3) the date that the statement was made; (4) the specific content of the statement; and (5) what was false and misleading about the statement.

**ANSWER:**

In addition to its General Objections above, Nammo Talley specifically objects to this Interrogatory to the extent it seeks information already known to Defendant Insurers or equally available to Defendant Insurers from sources other than Nammo Talley, including but not limited to information contained in their claims files, pleadings, briefs, documents already produced, previous disclosures and other discovery in this matter.   Nammo Talley further objects to this Interrogatory to the extent it seeks to impose a legal obligation of "inducement" on Nammo Talley that is not required by applicable law.   Moreover, Nammo Talley objects to this Interrogatory to the extent it seeks a legal conclusion.

Subject to and without limiting their General and specific objections, Nammo Talley states that throughout the course of negotiation of their insurance policy placement with Nammo Talley, Defendant Insurers and their agents represented that they would pay for liability, defense costs, and expenses for claims arising out of unexpected and unintended environmental property damage, such as those relating to the Nammo Talley Site.   Additionally, Defendant Insurers represented that they would act in good faith and fair dealing in their relationship with Nammo Talley.   Moreover, Defendant Insurers made misrepresentations with respect to the scope and application of the qualified pollution exclusion.   As Arizona's Court of Appeals recently recognized, the Insurance Rating Board (IRB)[2] had originally drafted and urged states to adopt the

---

[2] The IRB is the predecessor to the Insurance Services Office ("ISO").

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

pollution exclusion.  <u>Maricopa Cnty. V. Ariz. Prop. & Cas. Ins. Guar. Fund</u>, No. 2 CA CV 98-0076, 2000 Ariz. App. Unpub. LEXIS 6 (Apr. 27, 2000).  On behalf of its "member and subscriber companies," which likely included Defendant Insurers, the IRB sent letters to various state insurance regulators to encourage them to approve the exclusion in standard CGL policies.  In such a letter to Arizona's Director of Insurance in May 1970, May 1970, the IRB expressed a "need for prompt introduction of these exclusions in recognition of the potential and grave exposures reflected in the exclusions not previously envisioned," and explained the pollution exclusion as follows:

> Coverage for pollution or contamination is not provided in most cases under present policies because the damages can be said to be expected or intended and thus are excluded by the definition of occurrence. The above exclusion clarifies this situation so as to avoid any question of intent. Coverage is continued for pollution or contamination caused injuries when the pollution or contamination results from an accident except that no coverage will be provided under certain operations for injuries arising out of discharge or escape of oil into any body of water. <u>Id.</u>

Defendant Insurers' present positions and coverage defenses stand in stark contrast to this representation by the insurance industry.  Further details regarding Defendant Insurers' false and misleading statements can be found in Defendant Insurers' underwriting files, which Defendant Insurers have not yet produced.

    11.    Identify all facts that support your allegation that the DEFENDANT INSURERS breached any duty of good faith and fair dealing to NAMMO TALLEY.

**ANSWER:**

In addition to the General Objections, Nammo Talley specifically objects to this Interrogatory on the grounds that it is unlimited in time, overly broad, unduly burdensome, oppressive, and seeks information that is neither relevant to the subject matter of this litigation, nor reasonably likely to lead to the discovery of admissible evidence.  Additionally, Nammo Talley objects to this Interrogatory to the extent that it seeks information which may be derived or ascertained from documents already within

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Defendant Insurers' possession, custody and/or control, including their claims files. Nammo Talley further objects to this Interrogatory in that the burden of deriving or ascertaining the answer is substantially the same for Defendant Insurers as it is for Nammo Talley. Nammo Talley objects to this Interrogatory to the extent that it seeks information that is not within its possession, custody or control. Nammo Talley also objections to the extent this Interrogatory seeks information that is within the possession, custody or control of third parties and/or Defendant Insurers. Nammo Talley objects to the extent this Interrogatory calls for a legal conclusion. Additionally, Nammo Talley objects to this Interrogatory as premature, given that discovery has not been completed, or even substantially done. Nammo Talley also objects to this Interrogatory on the grounds the phrase "your allegation" is undefined, vague and ambiguous. Nammo Talley further objects to this Interrogatory to the extent it seeks information protected from disclosure, whether by the attorney-client privilege, the work product doctrine, or other applicable privilege or exemption.

Subject to and without limiting its General and specific objections, Nammo Talley states that Defendant Allstate Insurance Company, solely as successor in interest to Northbrook Excess and Surplus Insurance Company, formerly known as Northbrook Insurance Company ("Allstate"), issued insurance policies to Nammo Talley and/or its predecessors, including but not limited to policy numbers 63-300-019 and 63-002-569 (collectively, the "Allstate Policies"). Defendant Insurers Continental Casualty Company and Transportation Insurance Company issued insurance policies to Nammo Talley and/or its predecessors, including but not limited to policy numbers CCP9021329R, RDX9543831, RDX1782933, CCP2436424, and CCP004724934 (collectively, the "CNA Companies Policies"). In Arizona, there is an implied duty of good faith and fair dealing in each of the aforementioned insurance contracts. The duty of good faith and fair dealing requires Allstate and CNA Companies to give the same consideration to their insured's interests as they give to their own. Allstate's and CNA

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1    Companies' refusal to defend and indemnify Nammo Talley for losses arising out of
2    environmental property damage at the Site is directly contradicted by the terms of the
3    Allstate Policies and the CNA Companies Policies.  Allstate and CNA Companies failed
4    to give equal consideration to Nammo Talley's interests as they gave to their own
5    interests in arriving at their decisions.   Allstate and CNA Companies have denied
6    Nammo Talley the reasonably expected benefits of the aforementioned insurance
7    contracts.   Answering further, Nammo Talley refers Defendant Insurers to the facts
8    identified in its Response to Interrogatories Nos. 1-6, 15 & 16.

9           12.     IDENTIFY all INSURANCE POLICIES issued to NAMMO TALLEY
10   (or its alleged predecessors) from the 1966 to the present.

11   **ANSWER:**

12          In addition to the General Objections, Nammo Talley specifically objects to this
13   Interrogatory on the grounds that it is overly broad, unduly burdensome, oppressive, and
14   seeks information that is neither relevant to the subject matter of this litigation, nor
15   reasonably likely to lead to the discovery of admissible evidence.  Additionally, Nammo
16   Talley objects to this Interrogatory to the extent that it seeks information which may be
17   derived or ascertained from documents already within Defendant Insurers' possession,
18   custody and/or control.  Nammo Talley further objects to this Interrogatory in that the
19   burden of deriving or ascertaining the answer is substantially the same for Defendant
20   Insurers as it is for Nammo Talley.  Nammo Talley objects to this Interrogatory to the
21   extent that it seeks information that is not within its possession, custody or control.
22   Nammo Talley also objections to the extent this Interrogatory seeks information that is
23   within the possession, custody or control of third parties and/or Defendant Insurers.
24   Nammo Talley objects to the extent this Interrogatory calls for a legal conclusion.
25   Additionally, Nammo Talley objects to this Interrogatory as premature, given that
26   discovery has not been completed, or even substantially done.  Nammo Talley further
27   objects to this Interrogatory to the extent it seeks information protected from disclosure,

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1   whether by the attorney-client privilege, the work product doctrine, or other applicable

2   privilege or exemption.

3       Subject to and without limiting its General and specific objections, Nammo

4   Talley refers Defendant Insurers to documents already produced in this litigation from

5   which they may derive or ascertain responsive information, including:  NT-002373 –

6   2603, NT003242 – 3651 ("Nammo Talley Insurance Policy Information for Pollution

7   Losses"), and NT-001149 - 2108 (insurance policies issued to Nammo Talley), NT-

8   002170-2171, NT-002373-2707, which were produced in response to Defendant

9   Insurers' First Set of Joint Requests for Production of Documents.

10       13.    For each INSURANCE POLICY identified in YOUR response to

11   Interrogatory No. 12, IDENTIFY all amounts paid under that INSURANCE POLICY to

12   or on behalf of NAMMO TALLEY in connection with the SITE.  For the purpose of

13   this interrogatory, the term "IDENTIFY" means to state:   (1) the amount of each

14   payment; (2) the entity who paid it; (3) the subject matter of the payment; (4) the date

15   the payment was made; (5) the INSURANCE POLICY pursuant to which the payment

16   was made; and (6) whether the payment applied toward exhaustion of the "per

17   occurrence" or the aggregate limits of the respective INSURANCE POLICY.

18   **ANSWER:**

19       In addition to the General Objections, Nammo Talley specifically objects to this

20   Interrogatory on the grounds that it is overly broad, unduly burdensome, oppressive, and

21   seeks information that is neither relevant to the subject matter of this litigation, nor

22   reasonably likely to lead to the discovery of admissible evidence.  Additionally, Nammo

23   Talley objects to this Interrogatory to the extent that it seeks information which may be

24   derived or ascertained from documents already within Defendant Insurers' possession,

25   custody and/or control.  Nammo Talley further objects to this Interrogatory in that the

26   burden of deriving or ascertaining the answer is substantially the same for Defendant

27   Insurers as it is for Nammo Talley.  Nammo Talley objects to this Interrogatory to the

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

extent that it seeks information that is not within its possession, custody or control. Nammo Talley also objections to the extent this Interrogatory seeks information that is within the possession, custody or control of third parties and/or Defendant Insurers. Nammo Talley objects to the extent this Interrogatory calls for a legal conclusion. Additionally, Nammo Talley objects to this Interrogatory as premature, given that discovery has not been completed, or even substantially done.  Nammo Talley also objects to this Interrogatory on the grounds the phrases "paid under" and "in connection with" are undefined, vague and ambiguous.  Nammo Talley further objects to this Interrogatory to the extent it seeks information protected from disclosure, whether by the attorney-client privilege, the work product doctrine, or other applicable privilege or exemption.  Nammo Talley also objects to this Interrogatory to the extent it seeks information protected from disclosure by agreement(s) requiring Nammo Talley to keep information such strictly confidential.

Subject to and without limiting its General and specific objections, Nammo Talley states that, upon information and belief, other than certain sums associated with confidential settlement agreements, no amount has been paid under any such insurance policy to or on behalf of Nammo Talley in connection with the Site.

14.     IDENTIFY all settlements entered into by NAMMO TALLEY (including, but not limited to any settlement with its insurers) that RELATES TO NAMMO TALLEY'S environmental liabilities for the SITE including what, if any, portion of any settlement payment was allocated to payment of environmental liabilities for the SITE.

ANSWER:

In addition to the General Objections, Nammo Talley specifically objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, oppressive, and seeks information that is neither relevant to the subject matter of this litigation, nor reasonably likely to lead to the discovery of admissible evidence.  Additionally, Nammo Talley objects to this Interrogatory to the extent that it seeks information which may be

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

30

1  derived or ascertained from documents already within Defendant Insurers' possession,
2  custody and/or control.  Nammo Talley further objects to this Interrogatory in that the
3  burden of deriving or ascertaining the answer is substantially the same for Defendant
4  Insurers as it is for Nammo Talley.  Nammo Talley objects to this Interrogatory to the
5  extent that it seeks information that is not within its possession, custody or control.
6  Nammo Talley also objections to the extent this Interrogatory seeks information that is
7  within the possession, custody or control of third parties and/or Defendant Insurers.
8  Nammo Talley objects to the extent this Interrogatory calls for a legal conclusion.
9  Additionally, Nammo Talley objects to this Interrogatory as premature, given that
10  discovery has not been completed, or even substantially done.  Nammo Talley also
11  objects to this Interrogatory on the grounds the phrase "environmental liabilities" is
12  undefined, vague and ambiguous.  Nammo Talley further objects to this Interrogatory t
13  to the extent it seeks information protected from disclosure, whether by the attorney-
14  client privilege, the work product doctrine, or other applicable privilege or exemption.
15  Nammo Talley also objects to this Interrogatory to the extent it seeks information
16  protected from disclosure by agreement(s) requiring Nammo Talley to keep information
17  such confidential.

18       Subject to and without limiting its General and specific objections, Nammo
19  Talley states that it has settled its insurance claims, including those relating to the Site,
20  with the two insurance company defendants that have been dismissed from this action,
21  the terms of which are strictly confidential and non-discoverable.

22       15.   IDENTIFY all facts that support YOUR claim that NAMMO TALLEY is
23  a named insured, or is entitled to all of the rights and benefits of a named insured under
24  each of the DEFENDANT INSURER'S INSURANCE POLICIES.

25  **ANSWER:**

26       In addition to the General Objections, Nammo Talley specifically objects to this
27  Interrogatory on the grounds that it is overly broad, unduly burdensome, oppressive, and

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

31

seeks information that is neither relevant to the subject matter of this litigation, nor reasonably likely to lead to the discovery of admissible evidence. Additionally, Nammo Talley objects to this Interrogatory to the extent that it seeks information which may be derived or ascertained from documents already within Defendant Insurers' possession, custody and/or control. Nammo Talley further objects to this Interrogatory in that the burden of deriving or ascertaining the answer is substantially the same for Defendant Insurers as it is for Nammo Talley. Nammo Talley objects to this Interrogatory to the extent that it seeks information that is not within its possession, custody or control. Nammo Talley also objections to the extent this Interrogatory seeks information that is within the possession, custody or control of third parties and/or Defendant Insurers. Nammo Talley objects to the extent this Interrogatory calls for a legal conclusion. Additionally, Nammo Talley objects to this Interrogatory as premature, given that discovery has not been completed, or even substantially done. Nammo Talley further objects to this Interrogatory to the extent it seeks information protected from disclosure, whether by the attorney-client privilege, the work product doctrine, or other applicable privilege or exemption.

Subject to and without limiting its General and specific objections, Nammo Talley refers Defendants to the Named Insured provisions of their policies. Nammo Talley further states that Nammo Talley Industries, Inc. was formed in 1960. In 1975 Nammo Talley Industries, Inc.'s flagship organization, the Nammo Talley/Mesa division, was incorporated as Nammo Talley Industries of Arizona, Inc. Nammo Talley Industries of Arizona, Inc. was renamed Nammo Talley Defense Systems, Inc. in 1984. Carpenter Technology Corporation purchased Nammo Talley Industries, Inc. in 1998. In 1999 an employee buyout was completed through the formation of an Employee Stock Ownership Plan and Nammo Talley Defense Systems, Inc. became a stand-alone, privately held, 100% employee-owned company. Nammo Talley Defense Systems, Inc. was purchased as a wholly-owned subsidiary of Nammo AS (a Norwegian corporation)

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1   in 2007.  In 2008 Nammo Talley Defense Systems, Inc. was renamed Nammo Talley,

2   Inc.

3       Answering further, Nammo Talley refers Defendant Insurers to the following

4   documents already produced in this litigation from which they may derive or ascertain

5   responsive information:  [NT-003346 – 53 ("Nammo Talley, Inc. Company History"),

6   NT-002304 - 05 (Certificate of Incorporation of Nammo Talley Industries of Arizona,

7   Inc.), and NT-003658 - 99 (Stock Purchase Agreement, dated June 30, 1999), which

8   were produced in response to Defendants' First Set of Joint Requests for Production of

9   Documents].

10      16.    IDENTIFY each discharge, dispersal, release or escape of POLLUTANTS

11  at or from the SITE that caused the PERSONAL INJURIES or PROPERTY DAMAGE

12  for which YOU are seeking coverage in the COMPLAINT.  For the purpose of this

13  interrogatory, the term "IDENTIFY" means to state:  (1) the date on which each

14  discharge, dispersal, release or escape began; (2) the duration of each discharge,

15  dispersal, release or escape; (3) the specific cause of each discharge, dispersal, release

16  or escape; (4) the specific amount of PROPERTY DAMAGE or PERSONAL

17  INJURIES attributable to each discharge, dispersal, release or escape; (5) the specific

18  substance that was discharged, dispersed, released or escaped; (6) whether the

19  discharge, dispersal, release or escape was into the land, atmosphere or watercourse or

20  body of water; (7) the specific location where the discharge, dispersal, release or escape

21  took place; (8) whether the substances involved were discharged, dispersed, released or

22  escaped from a container or contained area.

23  ANSWER:

24      In addition to the General Objections, Nammo Talley specifically objects to this

25  Interrogatory on the grounds that it is overly broad, unduly burdensome, oppressive, and

26  seeks information that is neither relevant to the subject matter of this litigation, nor

27  reasonably likely to lead to the discovery of admissible evidence.  Additionally, Nammo

28  **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

33

Talley objects to this Interrogatory to the extent that it seeks information which may be derived or ascertained from documents already within Defendant Insurers' possession, custody and/or control.  Nammo Talley further objects to this Interrogatory in that the burden of deriving or ascertaining the answer is substantially the same for Defendant Insurers as it is for Nammo Talley.  Nammo Talley objects to this Interrogatory to the extent that it seeks information that is not within its possession, custody or control. Nammo Talley also objections to the extent this Interrogatory seeks information that is within the possession, custody or control of third parties and/or Defendant Insurers. Nammo Talley objects to the extent this Interrogatory calls for a legal conclusion. Additionally, Nammo Talley objects to this Interrogatory as premature, given that discovery has not been completed, or even substantially done.  Nammo Talley also objects to this Interrogatory on the grounds the terms/phrases "specific cause", "specific amount", "attributable to", "specific substance", "land", "atmosphere", "watercourse", and "body of water", "specific location", "container" and "contained area" are undefined, vague and ambiguous.  Nammo Talley further objects to this Interrogatory to the extent it seeks information protected from disclosure, whether by the attorney-client privilege, the work product doctrine, or other applicable privilege or exemption.

Subject to and without limiting its General and specific objections, Nammo Talley states that the likely sources of the unexpected and unintended contamination are occurrences, which were unknown at the time, from operations that were in conformance with state of the art and best practices for the time, as well as applicable regulatory guidelines and permits in effect at the time of operation, including:

*Thermal Treatment Unit*

From approximately 1966 until 1995, and to some extent until 2008, lead-containing waste propellants were "treated" at Nammo Talley's TTU by means of open burning.   For instance, during late 1976 and early 1977, Nammo Talley burned approximately 1,000 pounds of propellant containing 54.4% lead nitrate.   Nammo

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1   Talley also burned 200 pounds of lead styphnate during September 1979.  Additionally,
2   until 1995, Nammo Talley regularly burned a propellant containing 0.5% (by weight)
3   dibasic lead phosphate and various initiators or detonation cords, which may have
4   contained trace (milligram quantities) of lead compounds.  Such waste propellants were
5   burned in the steel burn boxes originally situated in the Old Burn Box Area and
6   relocated in September 1991 to Pit # 2- # 5.

7        The TTU is located at Nammo Talley's site in Mesa Arizona, specifically
8   northwest of Plant No. 4, north of Plant No. 2, and approximately 1.25 miles north-
9   northeast of the intersection of East Thomas Road and Higley Road.  The TTU is a
10  polygonal-shaped area, approximately 380 feet by 320 feet, consisting of several burn
11  pits, currently referred to as Pit # 1, Pit # 2 - # 5, and Pit # 6.  Each burn pit was
12  surrounded on three sides by earthen berms.  The berms ranged in height from
13  approximately 2 feet to 5 feet and consisted of soil and weathered bedrock materials that
14  were graded from the TTU site during construction of the burn pits.  The widths of the
15  berms range from 20 feet to 30 feet along the rear of the pits to 10 feet to 15 feet along
16  the sides.  Pit # 1 and Pit # 2 - # 5 occupied an area approximately 80 feet in length by
17  120 feet in width.  Because of the width of the berms, the actual size of the area used for
18  thermally treating waste propellants was significantly smaller.  The interior of Pit # 2 -#
19  5 was approximately 60 feet long by 75 feet wide.  Originally, Pit # 2 - # 5 was
20  comprised of four distinct pits, *i.e.* Pit # 2, Pit # 3, Pit # 4, and Pit # 5, separated by
21  earthen berms.  During 1991, the berms separating these four burn pits were removed
22  resulting in one large pit, *i.e.* Pit # 2 - # 5.

23       An area identified as the Old Burn Box Area was situated on the southwest
24  portion of the TTU.  No earthen berms were constructed in the Old Burn Box Area; it
25  was essentially a flat area that contained two burn boxes.  In 1991, these steel burn
26  boxes were moved to Pit #2-#5.

27

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

35

Additionally, prior to promulgation of RCRA regulations, Nammo Talley treated a small amount of explosives containing lead styphnate and lead nitrate compounds in pits dug on the southeastern portion of the TTU.

Nammo Talley, along with industry experts at the time, fully expected the excessive heat of the TTU to fully disintegrate all materials and waste treated in this manner. In addition, Nammo Talley's open burning operations were conducted in accordance with the conditions specified in its Open Burning Permit for Hazardous Materials issued by ADEQ, the 1991 Consent Decree, as well as its Part B permit application that was being reviewed by ADEQ. Nammo Talley adhered to the comprehensive procedures for collection and burning of its waste propellants as stated in its Part B permit application. For instance, ash residues from the burn boxes containing metal (mainly lead) potentially exceeding the RCRA Toxicity Characteristic limit were removed and placed in a properly labeled Satellite Accumulation drum for off-site disposal at a hazardous waste treatment, storage or disposal facility.

Unknown failure of materials treated in the TTU to fully disintegrate unintentionally and unexpectedly resulted in lead contamination in on-site soils, as well as off-site soils where storm water appears to have transported some of the contaminants onto neighboring property. Nammo Talley has incurred approximately $810,870 in costs in connection with remediating lead contamination at and around the Site and anticipates incurring substantial additional costs. Further, based on recent investigations, Nammo Talley expects to incur significant additional, and yet to be ascertained, costs to address off-site groundwater impacts resulting from unexpected and unintended perchlorate contamination.

*Water Bore-Out Pits/ Historic Pond Area*

From at least 1973, (and possibly as early as the mid-1960s), to 1990, rocket motors that required servicing were bored out at the operations building, *i.e.* the Water Bore-Out ("WBO") Operations Building, using a stream of high-pressure water to

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

disintegrate the solid perchlorate-containing propellant filler, liner, and boot. The water from these operations was screened in a metal container, which was expected to collect most of the solid material. The water then flowed into a concrete trough and then into a 55 gallon container where Nammo Talley expected the remaining solids to be separated from the water by settling. The water and dissolved suspended solids, (unknown at the time), flowed out of the second container into a concrete trough that conveyed the liquid stream from the operation building to two unlined surface impoundments, *i.e.* WBO Pit 1 and WBO Pit 2. During the time the water bore-out operation process was operational, such discharges ranged from 110,000 gallons/year to 410,000 gallons/year.

Plant #3 and the WBO Pits are located in the southwestern portion of Nammo Talley's Site, approximately 1.5 miles northeast of the intersection of East McDowell Road and North Greenfield Road. The WBO Pits are located approximately one-quarter mile east of the main Plant #3 facilities. These two unlined surface impoundments, each approximately 45 feet long by 12 feet wide, were enclosed within earthen berms, approximately 5 feet high and 7.5 to 10 feet wide, occupying a rectangular-shaped area approximately 61 feet long by 55 feet wide. The WBO Operations Building, constructed of concrete, is located approximately 210 feet northwest of the WBO Pits. As noted *supra*, water and suspended solids generated during WBO operations at this building were conveyed to the pits via a concrete trough.

An historic pond area (a/k/a historic pit area) ("HPA") has been identified as a probable predecessor to the WBO Pits. Historical aerial photographs from at least as early as 1964 through 1984 depict the HPA adjacent to the WBO Operations Building and approximately 150 feet north of the WBO Pits. Historical use of the HPA was apparently similar to that of the WBO Pits. The exact dimensions of the HPA appear to have varied and are unknown. The HPA appears to have been decommissioned by 1987.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

The presence of unknown solids that failed to full precipitate in the WBO Pits/HPA unintentionally and unexpectedly resulted in perchlorate contamination in on-site soils and groundwater as well as neighboring groundwater wells and property off-site. Nammo Talley has incurred approximately $1,495,162 in costs in connection with remediating perchlorate contamination at and around the Site and anticipates incurring substantial additional costs.

Answering further, Nammo Talley refers Defendant Insurers to the following documents already produced in this litigation from which they may derive or ascertain responsive information:  NT-005267 - 71 (March 2012 Cost Estimate for Historical Lead Contamination and Remediation); NT-005305 - 13 (June 8, 2012 Cost Actual/ Estimate for Historical WBO Perchlorate Contamination & Remediation), NT-083661 - 3703 (WBO Perchlorate Est. Remediation Costs History 6-2012), NT-005272 - 5304 (TTU Soil Remediation Costs History 6-7-12), NT-003333 - 3479 (claim information booklet submitted to, among others, CNA and Allstate, on October 22, 2008), NT-002743 - 48 (Letter from P. Lagas, Basin & Range Hydrogeologists, Inc. to D. Jones, Nammo Talley Defense Systems, dated March 31, 1997), NT-002292 - 2303 (site inspection document submitted to the EPA in 1980), and NT-002741 - 42 ("Old Water Bore-Out Information Nammo Talley Defense Systems, Inc. – Plant #3 3520 North Greenfield Road, Mesa, Arizona 85215"), NT-002276 - 91 (ADEQ Fact Sheet Aquifer Protection Permit Place ID #1407, LTF #46292 Significant Amendment Nammo-Nammo Talley, Inc., Plant No. 3"), NT-002708 - 40 (State of Arizona Significant Amendment to Aquifer Protection Permit No. P-101370 Place ID #1407, LTF #46292), NT-004729 – 5029 (Closure Plan Thermal Treatment Unit, dated April 11, 2012, prepared by Brown and Caldwell), NT-004245 - 73 (Infiltration Testing Plant No. 3, Nammo Talley, Inc. Mesa, Arizona, dated January 2011, prepared by Geosyntec Consultants), NT-003189 - 3241 (Supplemental Perchlorate Source Investigation Plant #3 Nammo Talley, Inc. Mesa, Arizona, dated September 2010, prepared by Geosyntec

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Consultants), NT-003129 - 88 (Work Plan for A Pilot Test of Perchlorate Bioremediation at the Former Water Bore-Out Facility, dated October 2009, prepared by Geosyntec Consultants), NT-000309 - 26 (Technical Memorandum regarding Budgetary Estimates of Future Environmental Costs to Complete Closure under the Resource Conservation and Recovery Act (RCRA) of the Thermal Treatment Unit (TTU) located at Nammo Talley, Mesa, Arizona, dated July 9, 2009, prepared by Brown and Caldwell), NT-002836 - 3128 (Perchlorate Source Investigation Nammo Talley, Inc. Mesa, Arizona, dated June 2009, prepared by Geosyntec Consultants), NT-012457 (Letter from D. Conroy, Maricopa Cnty. Health Dept., to J. Gaetjens, City of Mesa, dated January 6, 1984), NT-001143 ("Nammo Talley General Property Map Figure 2"), NT-034428 – 59 (Consent Judgment in *State of Arizona v. Nammo Talley Defense Systems, Inc.*, Case No. CV90-26811), and NT-001147 (composite of historical aerial photographs dated 1969, 1984, 1987, and 2008 depicting HPA), which were produced in response to Defendants' First Set of Joint Requests for Production of Documents.

17.    IDENTIFY each discharge, dispersal, release or escape of POLLUTANTS at or from the SITE that YOU claim was not gradual or continuous.

**ANSWER:**

In addition to the General Objections, Nammo Talley specifically objects to this Interrogatory on the grounds that it is unlimited in time, overly broad, unduly burdensome, oppressive, and seeks information that is neither relevant to the subject matter of this litigation, nor reasonably likely to lead to the discovery of admissible evidence. Additionally, Nammo Talley objects to this Interrogatory to the extent that it seeks information which may be derived or ascertained from documents already within Defendant Insurers' possession, custody and/or control. Nammo Talley further objects to this Interrogatory in that the burden of deriving or ascertaining the answer is substantially the same for Defendant Insurers as it is for Nammo Talley. Nammo Talley objects to this Interrogatory to the extent that it seeks information that is not within its

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

possession, custody or control.  Nammo Talley also objections to the extent this Interrogatory seeks information that is within the possession, custody or control of third parties and/or Defendant Insurers. Nammo Talley objects to the extent this Interrogatory calls for a legal conclusion.  Additionally, Nammo Talley objects to this Interrogatory as premature, given that discovery has not been completed, or even substantially done. Nammo Talley also objects to this Interrogatory on the grounds the terms "gradual" and "continuous" are undefined, vague and ambiguous.  Nammo Talley further objects to this Interrogatory to the extent it seeks information protected from disclosure, whether by the attorney-client privilege, the work product doctrine, or other applicable privilege or exemption.

Subject to and without limiting its General and specific objections, Nammo Talley incorporates its Response to Interrogatories Nos. 2, 16 & 29.

18.    IDENTIFY all facts supporting YOUR response to Interrogatory No. 17. For the purpose of this interrogatory, the term "IDENTIFY" means to state (1) the date and time of each RELEASE of POLLUTANTS which was not gradual or continuous and (2) the amount of each POLLUTANT RELEASED that was not gradual or continuous.

**ANSWER:**

In addition to the General Objections, Nammo Talley specifically objects to this Interrogatory on the grounds that it is unlimited in time, overly broad, unduly burdensome, oppressive, and seeks information that is neither relevant to the subject matter of this litigation, nor reasonably likely to lead to the discovery of admissible evidence.  Additionally, Nammo Talley objects to this Interrogatory to the extent that it seeks information which may be derived or ascertained from documents already within Defendant Insurers' possession, custody and/or control.  Nammo Talley further objects to this Interrogatory in that the burden of deriving or ascertaining the answer is substantially the same for Defendant Insurers as it is for Nammo Talley.  Nammo Talley

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

objects to this Interrogatory to the extent that it seeks information that is not within its possession, custody or control.   Nammo Talley also objections to the extent this Interrogatory seeks information that is within the possession, custody or control of third parties and/or Defendant Insurers. Nammo Talley objects to the extent this Interrogatory calls for a legal conclusion.  Additionally, Nammo Talley objects to this Interrogatory as premature, given that discovery has not been completed, or even substantially done. Nammo Talley also objects to this Interrogatory on the grounds the terms "gradual" and "continuous" are undefined, vague and ambiguous.  Nammo Talley further objects to this Interrogatory to the extent it seeks information protected from disclosure, whether by the attorney-client privilege, the work product doctrine, or other applicable privilege or exemption.

Subject to and without limiting its General and specific objections, Nammo Talley refers Defendant Insurers to its Response to Interrogatories Nos. 2, 16, 29 & 30.

19.   IDENTIFY each discharge, dispersal, release of escape of POLLUTANTS at or from the SITE that YOU claim was sudden and accidental.  For the purpose of this interrogatory, the term "sudden and accidental" has the same meaning as used in the DEFENDANTS' INSURANCE POLICIES.

**ANSWER:**

In addition to the General Objections, Nammo Talley specifically objects to this Interrogatory on the grounds that it is unlimited in time, overly broad, unduly burdensome, oppressive, and seeks information that is neither relevant to the subject matter of this litigation, nor reasonably likely to lead to the discovery of admissible evidence. Additionally, Nammo Talley objects to this Interrogatory to the extent that it seeks information which may be derived or ascertained from documents already within Defendant Insurers' possession, custody and/or control.  Nammo Talley further objects to this Interrogatory in that the burden of deriving or ascertaining the answer is substantially the same for Defendant Insurers as it is for Nammo Talley.  Nammo Talley

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

41

objects to this Interrogatory to the extent that it seeks information that is not within its possession, custody or control.   Nammo Talley also objections to the extent this Interrogatory seeks information that is within the possession, custody or control of third parties and/or Defendant Insurers. Nammo Talley objects to the extent this Interrogatory calls for a legal conclusion.  Additionally, Nammo Talley objects to this Interrogatory as premature, given that discovery has not been completed, or even substantially done. Nammo Talley also objects to this Interrogatory on the grounds the terms "sudden" and "accidental" are undefined, vague and ambiguous.  Additionally, Nammo Talley objects to this Interrogatory on the grounds that it is vague and misleading in that the insurance policies at issue in this litigation do not define the terms "sudden" and "accidental" as insinuated in this Interrogatory.  Nammo Talley further objects to this Interrogatory to the extent it seeks information protected from disclosure, whether by the attorney-client privilege, the work product doctrine, or other applicable privilege or exemption.

Subject to and without limiting its General and specific objections, Nammo Talley states that it claims that each discharge, dispersal, release or escape of POLLUTANTS at or from the SITE that caused the PROPERTY DAMAGE for which it is seeking coverage in the COMPLAINT, and as identified in its Responses to Interrogatories Nos. 2 & 16 *supra*, was "sudden", *i.e.* "unexpected or unintended", and "accidental" as those terms are used, if at all, in DEFENDANTS' INSURANCE POLICIES.

20.   IDENTIFY all facts supporting YOUR response to Interrogatory No. 19.

**ANSWER:**

In addition to the General Objections, Nammo Talley specifically objects to this Interrogatory on the grounds that it is unlimited in time, overly broad, unduly burdensome, oppressive, and seeks information that is neither relevant to the subject matter of this litigation, nor reasonably likely to lead to the discovery of admissible evidence. Additionally, Nammo Talley objects to this Interrogatory to the extent that it

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

seeks information which may be derived or ascertained from documents already within Defendant Insurers' possession, custody and/or control. Nammo Talley further objects to this Interrogatory in that the burden of deriving or ascertaining the answer is substantially the same for Defendant Insurers as it is for Nammo Talley. Nammo Talley objects to this Interrogatory to the extent that it seeks information that is not within its possession, custody or control. Nammo Talley also objections to the extent this Interrogatory seeks information that is within the possession, custody or control of third parties and/or Defendant Insurers. Nammo Talley objects to the extent this Interrogatory calls for a legal conclusion. Additionally, Nammo Talley objects to this Interrogatory as premature, given that discovery has not been completed, or even substantially done. Nammo Talley also objects to this Interrogatory on the grounds the terms "sudden" and "accidental" in Interrogatory No. 19 are undefined, vague and ambiguous. Additionally, Nammo Talley objects to this Interrogatory on the grounds that it is vague and misleading in that the insurance policies at issue in this litigation do not define the terms "sudden" and "accidental" as insinuated in Interrogatory No. 19. Nammo Talley further objects to this Interrogatory to the extent it seeks information protected from disclosure, whether by the attorney-client privilege, the work product doctrine, or other applicable privilege or exemption.

Subject to and without limiting its General and specific objections, Nammo Talley refers Defendant Insurers to the facts identified in its Response to Interrogatories Nos. 1-3, 16, 29 & 30.

21.    For each discharge, dispersal, release or escape of POLLUTANTS identified in YOUR response to Interrogatory No. 16, describe all actions or efforts taken by YOU at the time of the release, discharge, dispersal or escape to contain, remove or remediate the POLLUTANTS that were discharged, dispersed, released or that escaped.

**ANSWER:**

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

43

1    In addition to the General Objections, Nammo Talley specifically objects to this

2    Interrogatory on the grounds that it is unlimited in time, overly broad, unduly

3    burdensome, oppressive, and seeks information that is neither relevant to the subject

4    matter of this litigation, nor reasonably likely to lead to the discovery of admissible

5    evidence. Additionally, Nammo Talley objects to this Interrogatory to the extent that it

6    seeks information which may be derived or ascertained from documents already within

7    Defendant Insurers' possession, custody and/or control. Nammo Talley further objects

8    to this Interrogatory in that the burden of deriving or ascertaining the answer is

9    substantially the same for Defendant Insurers as it is for Nammo Talley. Nammo Talley

10   objects to this Interrogatory to the extent that it seeks information that is not within its

11   possession, custody or control. Nammo Talley also objections to the extent this

12   Interrogatory seeks information that is within the possession, custody or control of third

13   parties and/or Defendant Insurers. Nammo Talley objects to the extent this Interrogatory

14   calls for a legal conclusion. Additionally, Nammo Talley objects to this Interrogatory

15   as premature, given that discovery has not been completed, or even substantially done.

16   Nammo Talley also objects to this Interrogatory on the grounds the term "efforts" is

17   undefined, vague and ambiguous. Nammo Talley further objects to this Interrogatory to

18   the extent it seeks information protected from disclosure, whether by the attorney-client

19   privilege, the work product doctrine, or other applicable privilege or exemption.

20   Subject to and without limiting its General and specific objections, Nammo

21   Talley refers Defendant Insurers to the facts identified in its Response to Interrogatories

22   Nos. 1-3, 16, 29 & 30.

23   22.   IDENTIFY all facts supporting YOUR allegation that the contamination

24   at or emanating from the SITE was unexpected and unintended.

25   **ANSWER:**

26   In addition to the General Objections above, Nammo Talley specifically objects

27   to this Interrogatory as overly broad and unduly burdensome, as it improperly asks for

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

"all facts" in any way supporting the position that contamination at the Site was unexpected and unintended.  Such a broad request would literally include almost all facts in this matter, and Nammo Talley specifically incorporates every such fact by reference.  Nammo Talley further objects to this Interrogatory as attempting to improperly shift Defendant Insurers' burden of proving policy exclusions onto Nammo Talley.  It is Defendant Insurers' burden to prove that contamination at the Mesa, Arizona site was expected and intended.  Additionally, Nammo Talley objects to this Interrogatory to the extent it seeks information already known to Defendant Insurers or equally available to Defendant Insurers from sources other than Nammo Talley, including but not limited to information contained in pleadings, briefs, documents already produced, previous disclosures and other discovery in this matter.  Nammo Talley also objects to this Interrogatory to the extent it seeks information that in whole or in part is protected by the attorney-client privilege and/or work product doctrine or other agreements requiring Nammo Talley to keep information confidential.  Further, Nammo Talley objects to this Interrogatory because it asks Nammo Talley to prove a negative.

Subject to and without limiting its General and specific objections, Nammo Talley states that it used best practices and state of the art technology, and complied with applicable regulations in its operations at the Site.  Additionally, the groundwater at and around the Site is located at a depth far beneath the surface (at approximately 200 feet below the surface).  Nammo Talley had no reason to believe, and did not believe, that its state of the art and permitted operations would contaminate the soil or groundwater, especially given the relatively low level of discharges at the Site.

23.    IDENTIFY each of YOUR employees, agents, directors, officers, managers, supervisors, or any other person acting or purporting to act on YOUR behalf who has been charged with responsibility for monitoring or overseeing the

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

45

1  transportation, storage, disposal, treatment or release of POLLUTANTS at or from the

2  SITE.

3  **ANSWER:**

4  In addition to the General Objections above, Nammo Talley specifically objects

5  to this Interrogatory as overly broad and unduly burdensome, as it fails to limit the

6  request to a relevant time period and to the relevant issues of lead and perchlorate.

7  Nammo Talley further objects to this Interrogatory to the extent it seeks information

8  already known to Defendant Insurers or equally available to Defendant Insurers from

9  sources other than Nammo Talley, including but not limited to information contained in

10 pleadings, briefs, documents already produced, previous disclosures and other discovery

11 in this matter.

12 Subject to and without limiting its General and specific objections, Nammo

13 Talley identifies the following known individuals involved with environmental issues at

14 the Mesa, Arizona site:

15 • Brad S. Anderer - HES Manager; Technical Manager II (6/22/09 –

16 present);

17 • Robert C. Blomberg - Environmental Manager; Technical Manager II

18 (5/1/95 – present);

19 • Brian P. Buzash - Environmental & Safety Specialist IV (10/31/08 –

20 present);

21 • Ricky P. Ferguson - Technical Safety/Environmental IV (4/17/91 –

22 present);

23 • Robert B. Gray – Environmental Safety Specialist III (3/27/03 – 7/5/05);

24 • Scott Harczynski -Environmental Specialist; Environmental Engineer II

25 (12/14/92 – 3/3/95);

26

27

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1       •    <u>Donovan Jones</u> - Hired as Safety Director on March 6, 1967; Corporate

2   Director of Safety in March 1971; Safety /Security Manager/Director from January 1,

3   1984 until leaving Nammo Talley on December 31, 2002 (deceased 2012);

4       •    <u>Laurie Jacobson</u> - Environmental Specialist; Environmental Engineer II

5   (4/5/89 – 12/4/92);

6       •    <u>Gordon Scott Kerr</u> - Safety Manager; Adm. Manager II (4/4/88 88 -

7   4/19/12);

8       •    <u>Jeffrey L. Krivanec</u> - Technician IV (12/22/88 – 9/29/00) (deceased);

9       •    <u>Paul D. Piplani</u> – Technician II (5/7/01 – 7/6/01);

10      •    <u>Kevin M. Roberts</u> – Technician I (9/11/00 – 1/14/03);

11      •    <u>Emily L. Strong</u> – Environmental & Safety Specialist III (10/09/06 –

12  9/27/07);

13      •    <u>Daniel V. Haun</u> – Vice President of Engineering and Research.  In 2008

14  Mr. Haun was assigned certain responsibility for conducting environmental programs to

15  assure compliance with environmental regulations relative to hazardous materials and

16  hazardous waste treatment and disposal.

17      •    <u>Richard J. Wegener</u> - Environmental & Safety Specialist II (5/5/08 –

18  5/01/09);

19      •    <u>Steven M. Wegener</u> – May have additional knowledge as he served as a

20  vice president for Nammo Talley at the time the 1991 Consent Decree was entered;

21      •    <u>Sue Kobyleski</u> – May have additional knowledge as she managed certain

22  environmental issues; and

23      •    <u>Mark Dickerson</u> – Former General Counsel for Nammo Talley.

24      24.    IDENTIFY all of YOUR past and present property interests at the SITE.

25  For the purpose of this interrogatory the term "property interests" includes any

26  purchase, rental, lease, sale, or any other form of custody, control, use or occupation of

27  any portion of the SITE.  For the purpose of this interrogatory, the term "IDENTIFY"

28  **<u>CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER</u>**

1    means to state:  (1) the date of purchase, rental, lease or sale; (2) the specific document

2    or agreement that records the property interest; (3) the parties involved in the purchase,

3    rental, lease or sale; (4) the material terms of the agreement regarding the property

4    interest; and (5) the date when the property interest terminated.

5    **ANSWER:**

6        In addition to the General Objections above, Nammo Talley specifically objects

7    to this Interrogatory as overly broad and unduly burdensome, as it fails to limit the

8    request to a relevant time period and relevant information.  Additionally, Nammo Talley

9    objects to this Interrogatory to the extent it seeks information already known to

10   Defendant Insurers or equally available to Defendant Insurers from sources other than

11   Nammo Talley, including but not limited to information contained in pleadings, briefs,

12   documents already produced, previous disclosures, other discovery in this matter, and

13   public documents.    Nammo Talley also objects to this Interrogatory to the extent it

14   seeks information that in whole or in part is protected by the attorney-client privilege

15   and/or work product doctrine or other agreements requiring Nammo Talley to keep

16   information confidential.

17       Subject to and without limiting its General and specific objections, Nammo

18   Talley states that the Site is comprised of Plants 1, 2, 3, 4, 5, and 6.  Nammo Talley

19   owned the property on which historical Plant 1 was located.  This property has since

20   been sold and is currently the site of a Wal-Mart.  Nammo Talley previously leased the

21   property on which Plants 5 and 6 were located.  Nammo Talley currently leases the

22   property on which the current Plant 1, and Plants 2, 3, and 4 are located from the

23   Arizona State Land Department.  [See Leases, Bates Nos. NT-000001 - 46, NT-002109

24   - 22].

25       25.    IDENTIFY the earliest date at which the presence of POLLUTANTS at

26   the SITE (including soil and groundwater) exceeded any concentration limit allowed by

27

28   **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1  any governmental agency, or was otherwise deemed to be hazardous to people and/or

2  the environment.

3  **ANSWER:**

4      In addition to the General Objections above, Nammo Talley specifically objects

5  to this Interrogatory as overly broad, unduly burdensome and unlikely to lead to the

6  discovery of admissible evidence, as it fails to limit the request to lead and perchlorate.

7  Additionally, Nammo Talley objects to this Interrogatory to the extent it seeks

8  information already known to Defendant Insurers or equally available to Defendant

9  Insurers from sources other than Nammo Talley, including but not limited to

10 information contained in pleadings, briefs, documents already produced, previous

11 disclosures, other discovery in this matter, and public documents.   Nammo Talley

12 further objects to this Interrogatory as vague and ambiguous, without clarifying what is

13 meant by "deemed to be hazardous to people and/or the environment."

14      Subject to and without limiting its General and specific objections, Nammo

15 Talley states that the applicable government agencies did not have an applicable

16 regulatory concentration limit for perchlorate in groundwater/drinking water during the

17 relevant time periods of Nammo Talley's operations.  On June 14, 1996, Nammo Talley

18 submitted an APP closure application and sampling plan for the WBO to ADEQ.  After

19 much negotiation, and several demands by ADEQ, Talley received final closure

20 approval for the WBO on September 4, 2000 on the condition that Nammo Talley

21 would annually submit a report on the status of perchlorate regulation and agree to re-

22 open the closure permit if the EPA promulgated an applicable regulatory standard.  As

23 part of this process, ADEQ required Nammo Talley to conduct additional investigations

24 for perchlorate.  [See Bates Nos. NT-003384-3386].

25      In December 2008, EPA issued for the first time an interim health advisory to

26 assist state and local officials in addressing local contamination of perchlorate in

27 drinking water.  Around this time, ADEQ reopened the closure permit and continued to

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

49

affirmatively assert its regulatory authority over Nammo Talley pursuant to the APP program and alleged violations of AACR-18-11-405(c) and A.R.S. § 49-241 regarding the discharge of a pollutant in an aquifer that impairs existing or reasonably foreseeable uses of water in an aquifer. The interim health advisory level of 14 micrograms per liter, or parts per billion, is based on the reference dose recommended by the National Research Council of the National Academy of Sciences. Nammo Talley further refers Defendant Insurers to the Perchlorate Remedial Action Work Plan Plant No. 3, Nammo Talley, Inc. Mesa, Arizona, dated February 2011, prepared by Geosyntec Consultants, Bates Nos. NT-004187 - 4244, already produced in this litigation from which they may derive or ascertain further responsive information, including but not limited to applicable levels and/or concentrations and analytical results.

With respect to lead contamination, during the period from December 1986 to September 1991, a series of soil assessment activities were completed to determine the levels of leachable metals in soils at various locations within the TTU after site-wide and spot soil removal was performed. The leachable metals concentrations in soil were determined using the extraction procedure – toxicity ("EP-TOX") prior to 1989 and the Toxicity Characteristic Leaching Procedure ("TCLP") after 1989. As part of a Consent Judgment executed on September 6, 1991 between Nammo Talley and the State of Arizona (represented by ADEQ and the Arizona Attorney General, a Site Assessment Plan ("SAP") (Basin & Range, 1991) was submitted to ADEQ for the TTU. The SAP, which determined the extent of contamination, was approved by ADEQ in December 1996 and was followed by numerous clean-up actions from 2000 to present. In 2009, a second SAP was implemented as part of the site closure and contains the soil data used to estimate soil clean-up requirements. Nammo Talley refers Defendant Insurers to the Closure Plan Thermal Treatment Unit, dated April 11, 2012, prepared by Brown and Caldwell, Bates nos. NT-004729 - 5029, already produced in this litigation from which

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1    they may derive or ascertain further responsive information, including but not limited to

2    applicable levels and/or concentrations and analytical results.

3        26.    IDENTIFY the specific amount of PROPERTY DAMAGE or

4    PERSONAL INJURIES that resulted or occurred for each year that the

5    DEFENDANTS' INSURANCE POLICIES were in effect.

6    **ANSWER:**

7        In addition to the General Objections above, Nammo Talley specifically objects

8    to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated

9    to the discovery of admissible evidence.    Nammo Talley further objects to this

10   Interrogatory as vague and ambiguous, and asking a compound question of property

11   damage that "resulted" or "occurred" in a given year.    Moreover, Nammo Talley objects

12   to this Interrogatory to the extent it seeks information already known to Defendant

13   Insurers or equally available to Defendant Insurers from sources other than Nammo

14   Talley, including but not limited to information contained in pleadings, briefs,

15   documents already produced, previous disclosures and other discovery in this matter.

16   Additionally, Nammo Talley objects to this Interrogatory to the extent it implies that

17   Nammo Talley paid damages on account of personal injuries in connection with the site.

18   Nammo Talley further objects to this Interrogatory as seeking expert opinion or

19   otherwise seeking to impose obligations on Nammo Talley in addition to or in excess of

20   those authorized by the Federal Rules of Civil Procedure and/or any other applicable

21   rules or orders.

22       Subject to and without limiting its General and specific objections, Nammo

23   Talley states that it has not been able to determine the specific amount of property

24   damage that resulted or occurred in any given year.    The contamination, though

25   unexpected and unintended, was continuous and happened during all policy years.

26

27

28   **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

51

27.   IDENTIFY when YOU first became aware of each item of PROPERTY DAMAGE and/or PERSONAL INJURIES for which YOU are seeking coverage in the COMPLAINT.

**ANSWER:**

In addition to the General Objections above, Nammo Talley specifically objects to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to the discovery of admissible evidence.   Nammo Talley further objects to this Interrogatory to the extent it sets limitations or otherwise varies from the policies' language.   The policies provide coverage here for third-party liability, not first party liability, and accordingly provide coverage for "all sums which the insured shall become legally obligated to pay as damages <u>because of</u> . . . property damage." (Emphasis added).   Moreover, Nammo Talley objects to this Interrogatory to the extent it seeks information already known to Defendant Insurers or equally available to Defendant Insurers from sources other than Nammo Talley, including but not limited to information contained in pleadings, briefs, documents already produced, previous disclosures and other discovery in this matter.   Additionally, Nammo Talley objects to this Interrogatory to the extent it implies that Nammo Talley paid damages on account of personal injuries in connection with the site.   Nammo Talley further objects to this Interrogatory as seeking expert opinion or otherwise seeking to impose obligations on Nammo Talley in addition to or in excess of those authorized by the Federal Rules of Civil Procedure and/or any other applicable rules or orders.

Subject to and without limiting its General and specific objections, Nammo Talley refers Defendant Insurers to its Responses to Interrogatories Nos. 1-6, 16, 25, 29 & 30.

28.   IDENTIFY each of YOUR existing and former departments, divisions or other organizational units that has or had primary responsibility for ensuring YOUR compliance with environmental laws and regulations at the SITE or for generating or

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

maintaining information concerning environmental matters with respect to the SITE, or for conducting or supervising, investigations relating to environmental matters at the SITE.

**ANSWER:**

In addition to the General Objections above, Nammo Talley objects to this Interrogatory on the grounds that it is vague, not limited in scope or time, and duplicative of Interrogatory No. 23. Subject to and without waiving its General and specific objections, Nammo Talley responds that its Health, Environmental, and Safety Department, which was formerly known as the Safety Department and the Safety and Environmental Quality Department, has the primary responsibility for the matters listed in this Interrogatory.

29.   IDENTIFY each instance of actual or alleged non-compliance with, or actual or alleged violation of, any local, state or federal law, statute, regulatory, permit or order concerning the regulation of POLLUTANTS and/or the protection of the environment, including land, groundwater, and surface water.  For the purpose of this interrogatory, the term "IDENTIFY" means to state:  (1) the specific statute, regulation, law, permit or order that was actually or allegedly violated; (2) the date that such actual or alleged violation took place; and (3) the circumstances giving rise to each actual or alleged violation.

**ANSWER:**

In addition to the General Objections above, Nammo Talley objects to this Interrogatory on the grounds that it is vague, not limited in scope or time, and not reasonably calculated to lead to the discovery of admissible evidence in that it broadly encompasses alleged or actual violations over the 60-plus years of operation of the Site, to the extent any exist, that have no bearing or impact on the current environmental conditions at the Site, Nammo Talley's insurance claim against Defendant Insurers regarding perchlorate contamination and the closure of the TTU, or the current

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

53

1  environmental investigation and remediation obligations resulting in the costs Nammo

2  Talley seeks to recover from Defendant Insurers. Such information is irrelevant.

3  Moreover, this Interrogatory is grossly overbroad and would result in an undue burden

4  being placed on Nammo Talley. Indeed, Nammo Talley has provided, or will provide,

5  all the historic operating and environmental-related files in its possession from which

6  Defendant Insurers may obtain additional responsive information.

7  Subject to and without waiving its General and specific objections, Nammo

8  Talley responds that with the passing of the Resource Conservation & Recovery Act

9  ("RCRA") in the late 1970s, and its codification and amendments into the early 1980s,

10  the waste propellants generated as a result of manufacturing operations at the Site were

11  defined as hazardous waste if they exhibited hazardous waste "characteristics of re-

12  activity," as defined in U.S. Government Code of Federal Regulations (C.F.R.) Title 40

13  Part 261.23. As such, waste propellants were treated at the TTU in compliance with 40

14  C.F.R. § 265.382 of RCRA, by means of open burning which during its operation was

15  the only safe and recommended method for treatment of such materials. During the

16  applicable policy periods, Nammo Talley had no knowledge of any unauthorized

17  releases or spills at its TTU in violation of any regulation or permit.

18  Prior to that time, however, Arizona Department of Health Services alleged that

19  Nammo Talley had violated certain state regulations. For example, on June 10, 1986,

20  the Arizona Department of Health Services sent correspondence to Mr. Donovan J.

21  Jones of Nammo Talley outlining alleged violations of Arizona Official Compilation of

22  Administrative Code Rules & Regulations ("ACRR") R9-8-1801 *et seq*. Regulators had

23  apparently observed certain alleged violations in an Hazardous Waste Facility

24  Inspection conducted on February 5, 1986, in accordance with A.R.S. 36-28-21 [See

25  NT-017143 - 48]. Nammo Talley disputed each of these violations. [See generally NT-

26  023433 - 554].

27

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

54

In 1991, Nammo Talley entered into a Consent Order with ADEQ to determine if soils at the TTU and the inactive WBO area at Plant 3 had been adversely impacted by historic operations. [See Bates Nos. NT00248 – 81]. The Consent Order, in addition to requiring Nammo Talley to pay a penalty which Nammo Talley is not seeking to recover from Defendant Insurers, required Nammo Talley to submit a revised Part B Permit Application pursuant to RCRA.   Various compliance inspections occurred and resulted in some alleged violations, which Nammo Talley refuted.  [See, e.g., NT-077526 - 42, NT-077745 - 65].  The Consent Order, and the final revised Part B Permit, required Nammo Talley to perform certain activities regarding the treatment and disposal of hazardous waste at the Site.  Additionally, in late 1993/early 1994, EPA conducted a RCRA Facility Assessment of the TTU and Plants 2 through 6 at the Site. The Facility Assessment identified 52 solid waste management units ("SWMUs") and 16 additional areas of concern.  [See NT-032452 – 55; NT-065515 - 639].

In early 2008, Nammo Talley formally advised ADEQ that it would no longer need to open burn waste propellant.  Instead, Nammo Talley began disposing of the propellant at a Part B permitted, EPA regulated, TTU facility.  As a requirement of Nammo Talley's interim status RCRA Part B Permit, the TTU was required to undergo a regulatory closure.  Nammo Talley submitted a formal closure plan that was subject to the review and approval of ADEQ.  ADEQ alleged various supposed violations of the closure requirements under the Part B Permit, which were disputed by Nammo Talley [See, e.g., Bates Nos. NT-00103 - 247].

Further, in approximately December 2007, Nammo Talley also applied for a permanent amendment to its APP Permit P-101370, hoping to amend the former WBO Facility Closure Plan to include additional investigations for ammonium perchlorate. Although there is no specific applicable regulatory limit for perchlorate in the groundwater, the release of such substance represents an occurrence during the policy period of Defendant Insurers' policies, which ADEQ alleges violated A.R.S. § 49-241

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

by impairing a reasonably foreseeable use of an aquifer.  Nammo Talley, however, has not been prosecuted for any violation of such statute, which was not enacted for much of the time of Nammo Talley's operations.  [See Response to Interrogatories Nos. 2 & 16].  Indeed, Nammo Talley had no knowledge of any unauthorized releases or spills at its TTU in violation of any regulation or permit.  [See Site Assessment Plan dated December 4, 1991 at p. 1-12, Bates Nos. NT-068967 – 9027; Site Assessment Plan dated March 5, 1997, Bates Nos. NT-068109 - 208].

In connection with this closure, ADEQ advised Nammo Talley that, among other things, Rule R18-8-265.(a), 40 C.S.R. 265.12(b) required that a closure plan include procedures to sample surrounding soils.  [See Letter to Daniel Haun from Anthony Leverock of ADEQ dated June 3, 2009, Bates Nos. NT-005263 - 64].  ADEQ believes that closure must be based upon a perchlorate Health-Based Guidance Level (for drinking water) ("HBGL") of 14 UG/L or Nammo Talley must develop an alternative standard based on assessment of reasonable foreseeable use of the Aquifer.  Thus, ADEQ alleges that Nammo Talley's prior operations violated AACR-18-11-405(c) and A.R.S. § 49-241 regarding the discharge of pollutants in an aquifer that impairs existing or reasonably foreseeable uses of water in an aquifer.  ADEQ has alleged that Nammo Talley must develop and foresee available uses of the aquifer in consultation with land owners and water providers in order to proceed with its closure plan.  [See Letter from Anthony Leverock to Daniel Haun dated June 24, 2009, Bates Nos. NT-000183 - 188].

In addition, in his June 24, 2009 letter, Mr. Leverock of ADEQ alleged that Nammo Talley's closure plan submittal was administrative and incomplete because it was missing requisite site characterization detail and other information necessary to ensure notice of administrative completeness in accordance with A.R.S. §  41-1702 - § 41-1079 and AACR 18-1-501 – R18-1-5-25.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

30.    IDENTIFY all measures, safeguards, and precautions taken by YOU at the SITE to prevent the release, discharge, dispersal or escape of POLLUTANTS into the land, atmosphere, groundwater and surface water.

**ANSWER:**

In addition to the General Objections, Nammo Talley specifically objects to this Interrogatory on the grounds that it is unlimited in time, overly broad, unduly burdensome, oppressive, and seeks information that is neither relevant to the subject matter of this litigation, nor reasonably likely to lead to the discovery of admissible evidence.  Additionally, Nammo Talley objects to this Interrogatory to the extent that it seeks information which may be derived or ascertained from documents already within Defendant Insurers' possession, custody and/or control.  Nammo Talley further objects to this Interrogatory in that the burden of deriving or ascertaining the answer is substantially the same for Defendant Insurers as it is for Nammo Talley.  Nammo Talley objects to this Interrogatory to the extent that it seeks information that is not within its possession, custody or control.  Nammo Talley also objections to the extent this Interrogatory seeks information that is within the possession, custody or control of third parties and/or Defendant Insurers. Nammo Talley objects to the extent this Interrogatory calls for a legal conclusion.  Additionally, Nammo Talley objects to this Interrogatory as premature, given that discovery has not been completed, or even substantially done. Nammo Talley also objects to this Interrogatory on the grounds the terms "measures", "safeguards", "precautions", and "prevent" are undefined, vague and ambiguous. Nammo Talley further objects to this Interrogatory to the extent it seeks information protected from disclosure, whether by the attorney-client privilege, the work product doctrine, or other applicable privilege or exemption.

Subject to and without limiting its General and specific objections, Nammo Talley responds that from possibly the mid-1960s, and at least from 1973, to October 1990 the water after treatment to collect suspended solids generated by this process was

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

57

1   collected in the TDS Plant # 3, unlined, water bore-out pits, as described in Nammo

2   Talley's Responses to Interrogatories Nos. 2, 16, and 29 *supra*.

3       From approximately 1988 thorough October 1990, solids collected in the settling

4   container were removed while wet and temporarily accumulated at or near the point of

5   generation in 55-gallon drums. Additionally, fine-grained solids, which collected in the

6   bottom of the water bore-out pits, were removed while wet and placed in 55-gallon

7   drums. Drums containing water bore-out solids were transported to Nammo Talley's

8   TTU and treated, along with waste propellants generated as a result of Nammo Talley's

9   manufacturing operations, by means of open burning.  Nammo Talley's open burning

10  operations were conducted in accordance with the conditions specific in its Open

11  Burning Permit for Hazardous Materials issued by ADEQ and its Part B Permit under

12  RCRA.  The burn ground was situated on granitic bedrock in a remote location secured

13  from public access and had a large firebreak.

14      Prior to approximately 1998, solids generated as a result of water bore-out

15  operations were burned in the water bore-out pits. Prior to initiating a scheduled burn,

16  those solids were collected and placed in one of the water bore-out pits, along with fine-

17  grained solids that had accumulated in the bottom of that pit. Water from continued

18  water bore-out operations was diverted into the adjacent pit, and the solids contained in

19  the water bore-out pit selected for the burn were allowed to dry. After drying, the burn

20  was initiated following the same general procedures used for the burning of waste

21  propellants on-site at Nammo Talley's TTU facility.  In general, Nammo Talley cleaned

22  each of the pits and apparatus used on the day following burning activities.  If suspected

23  unburned materials were present, they were collected and placed in sealed plastic bags

24  and held in metal drums until the next burn.  [See NT-020493 - 511]. Nammo Talley

25  further refers Defendant Insurers to the facts identified in its Response to Interrogatories

26  Nos. 1-3, 16, & 29.

27

28
        **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Answering further, Nammo Talley states that it has taken additional measures, safeguards, and precautions to prevent discharge, dispersal, release or escape of POLLUTANTS at or from the SITE that caused the PROPERTY DAMAGE for which it is seeking coverage in the COMPLAINT, and as identified in its Response to Interrogatories Nos. 2 & 16 *supra*, including investigative measures, *e.g.*, soil testing, sampling, and analysis; groundwater sampling, analysis, and monitoring; installation of monitoring wells; and modeling, as well as remedial measures, *e.g.*, soil stabilization; construction of berms and retention areas to provide on-site containment of storm water; removal of burn equipment; and excavation and removal of contaminated soils. Nammo Talley refers Defendant Insurers to the following documents already produced in this litigation from which they may derive or ascertain responsive information:  [NT-003333 - 3479 (claim information booklet submitted to, among others, CNA and Allstate, on October 22, 2008), NT-005267 - 71 (March 2012 Cost Estimate for Historical Lead Contamination and Remediation); NT-005305 - 13 (June 8, 2012 Cost Actual/ Estimate for Historical WBO Perchlorate Contamination & Remediation), NT-083661 - 703 (WBO Perchlorate Est. Remediation Costs History 6-2012), NT-005272 - 5304 (TTU Soil Remediation Costs History 6-7-12), NT-034428 - 59 (Consent Judgment in *State of Arizona v. Nammo Talley Defense Systems, Inc.*, Case No. CV90-26811), NT-002743 - 48 (Letter from P. Lagas, Basin & Range Hydrogeologists, Inc. to D. Jones, Nammo Talley Defense Systems, dated March 31, 1997), NT-002276 - 91 (ADEQ Fact Sheet Aquifer Protection Permit Place ID #1407, LTF #46292 Significant Amendment Nammo-Nammo Talley, Inc., Plant No. 3"), NT-002276 – 91 (State of Arizona Significant Amendment to Aquifer Protection Permit No. P-101370 Place ID #1407, LTF #46292), NT-004245 - 73 (Infiltration Testing Plant No. 3, Nammo Talley, Inc. Mesa, Arizona, dated January 2011, prepared by Geosyntec Consultants), NT-003189 - 3241 (Supplemental Perchlorate Source Investigation Plant #3 Nammo Talley, Inc. Mesa, Arizona, dated September 2010, prepared by Geosyntec Consultants), NT-

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1  003129 - 88 (Work Plan for A Pilot Test of Perchlorate Bioremediation at the Former
2  Water Bore-Out Facility, dated October 2009, prepared by Geosyntec Consultants), NT-
3  000309 - 326 (Technical Memorandum regarding Budgetary Estimates of Future
4  Environmental Costs to Complete Closure under the Resource Conservation and
5  Recovery Act (RCRA) of the TTU located at Nammo Talley, Mesa, Arizona, dated July
6  9, 2009, prepared by Brown and Caldwell), and NT-002836 - 3128 (Perchlorate Source
7  Investigation Nammo Talley, Inc. Mesa, Arizona, dated June 2009, prepared by
8  Geosyntec Consultants)].

9    31.  IDENTIFY all contracts, memoranda of understanding, internal or
10 administrative rules or procedures that RELATE to payment, billing or allocation of
11 YOUR costs for maintenance, clean-up, investigation or closure of the SITE.
12 **ANSWER:**

13   In addition to the General Objections above, Nammo Talley objects to this
14 Interrogatory on the grounds that it is vague, not limited in scope or time, not reasonable
15 calculated to lead to the discovery of admissible evidence, and would impose an undue
16 burden on Nammo Talley.   Nammo Talley further objects to this Interrogatory to the
17 extent it seeks information already known to Defendant Insurers or equally available to
18 Defendant Insurers from sources other than Nammo Talley, including but not limited to
19 information contained in pleadings, briefs, documents already produced, previous
20 disclosures and other discovery in this matter.

21   Subject to and without waiving its General and specific objections, Nammo
22 Talley responds that it is unaware of any administrative rules or procedures that relate to
23 its payment, billing, or allocation of costs for environmental remediation and
24 investigation.   Nammo Talley is the sole party responsible for costs relating to the
25 maintenance, clean-up, investigation, and closure of the Site and is not allocating such
26 costs to any other party.

27
28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1    Nammo Talley has fully detailed its costs incurred, as well as its projected future

2    costs in response to Interrogatories Nos. 2 and 4-6, and produced all documents in its

3    possession supporting those costs.

4    32.    IDENTIFY all amounts/costs that are the subject of the COMPLAINT and

5    that have been, or will be, included in YOUR forward pricing, billing rates, overhead or

6    any other submission for payment to a third-party, including any claim for

7    reimbursement under any government contract(s).  For the purpose of this interrogatory,

8    the term "IDENTIFY" means to state:  (1) the specific amount of the cost; (2) the

9    specific nature of the cost; (3) the date it was incurred; (3) the party billed; and (4) the

10   date it was paid.

11   **ANSWER:**

12   In addition to the General Objections above, Nammo Talley objects to this

13   Interrogatory on the grounds that it is vague and not reasonable calculated to lead to the

14   discovery of admissible evidence.   Subject to and without waiving its General and

15   specific objections, Nammo Talley responds that there have been no specific recoveries

16   of environmental costs under any of its government contracts.

17   33.    IDENTIFY  all  third  parties,  including  any  governmental  agencies,

18   auditors, or regulators, to whom you have provided information regarding past or

19   estimated future costs of investigating, removing or remediating contamination at or

20   from the SITE.

21   **ANSWER:**

22   In addition to the General Objections above, Nammo Talley objects to this

23   Interrogatory on the grounds that it is not reasonable calculated to lead to the discovery

24   of admissible evidence and seeks information protected from discovery by the attorney-

25   client privilege, the work product doctrine, and other common law privileges, such as

26   the privilege afforded accounts and auditors.  Nammo Talley further objects to this

27   Interrogatory to the extent it seeks information already known to Defendant Insurers or

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

61

1   equally available to Defendant Insurers from sources other than Nammo Talley,
2   including but not limited to information contained in pleadings, briefs, documents
3   already produced, previous disclosures and other discovery in this matter.

4        Subject to and without waiving its General and specific objections, Nammo
5   Talley responds that it has provided certain information regarding its past and future
6   costs associated with environmental cleanup, investigation, and closure of the Site with
7   its attorneys, the accounting firm of Katz, Abosch, Windescheim, Gershman &
8   Freedman, PA, ADEQ, including the Hazardous Waste Compliance and Hazardous
9   Waste Permits Units of ADEQ's Waste Programs Division, the Waste Permits Section,
10  and the APP & Drywell Unit of ADEQ's Water Quality Division.

11       34.   IDENTIFY all actions taken by YOU to satisfy any and all provisions
12  under the lease entered into between YOU and the Arizona State Trust beginning in
13  1966 that relate to the condition of the leased property, including the quality of the land,
14  groundwater, surface water and adjoining land.

15  **ANSWER:**

16       In addition to the General Objections above, Nammo Talley objects to this
17  Interrogatory on the grounds that it is vague, not limited in scope or time, and not
18  reasonable calculated to lead to the discovery of admissible evidence.  Subject to and
19  without waiving its General and specific objections, Nammo Talley responds that with
20  respect to its current coverage claims against the Defendant Insurers for property
21  damage arising out the occurrences necessitating the current environmental cleanup as
22  part of the regulatory closure process, it has not taken any specific action relating to the
23  condition of the leased property, including the quality of the land, groundwater, surface
24  water and adjoining land, to satisfy a provision of condition of any lease entered into
25  between Nammo Talley and the Arizona State Land Department ("ASLD") with respect
26  to lands held in the Arizona State Trust.  Nammo Talley has kept the ASLD informed of
27  the current state of the Site and the interactions with ADEQ.  The ASLD has not made

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1    any demands of Nammo Talley with regards to the condition of the property under any

2    lease.

3        Unrelated to its current claims for insurance coverage, and in connection with

4    lease renewal application 23-95852, ASLD requested information from Nammo Talley

5    regarding some of its environmental compliance practices, which Defendant Insurers

6    may derive from documents produced in this case.  For example, on or about February

7    24, 1989, ASLD inquired as to underground storage tanks, and septic systems at the Site

8    in connection with a lease renewal application submitted by Nammo Talley.  [See NT-

9    075511 - 13].  Nammo Talley responded to ASLD's concerns and obtained the

10   requested lease renewal.

11       35.    IDENTIFY each order, enforcement action or demand by the Arizona

12   Department of Environmental Quality, including the specific provisions therein, that

13   requires YOU to investigate and remediate (not including monitoring) contamination at

14   or emanating from the SITE and for which YOU are seeking coverage in the

15   COMPLAINT.

16   **ANSWER:**

17       In addition to the General Objections above, Nammo Talley objects to this

18   Interrogatory on the grounds that it is vague, not limited in scope or time, seeks to

19   impose an undue burden on Nammo Talley, and is duplicative of Interrogatory No. 1.

20   Nammo Talley further objects to this Interrogatory to the extent it seeks information

21   already known to Defendant Insurers or equally available to Defendant Insurers from

22   sources other than Nammo Talley, including but not limited to information contained in

23   pleadings, briefs, documents already produced, previous disclosures and other discovery

24   in this matter.

25       Subject to and without waiving its General and specific objections, Nammo

26   Talley responds that ADEQ's demands are set forth in the agency correspondence and

27   closure reports disclosed by Nammo Talley, as well as the 1991 Consent Order.

28   **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1   Nammo Talley is also obligated to comply with the provisions of its revised Part B

2   Permit under RCRA and the requirements for closure under its forthcoming revised

3   APP Permit.   Nammo Talley further responds by referring to, and incorporating, its

4   response to Interrogatories Nos. 1-3, 16, 29 & 30.

5        36.   IDENTIFY all PERSONS with knowledge of facts that support YOUR

6   responses to DEFENDANT INSURERS' First Set of Joint Interrogatories.

7   **ANSWER:**

8        In addition to the General Objections above, Nammo Talley objects to this

9   Interrogatory on the grounds that it is vague and seeks to impose an undue burden on

10  Nammo Talley.   Subject to and without waiving its General and specific objections,

11  Nammo Talley responds that those persons listed in response to Interrogatory No. 23

12  herein and in Section A of Nammo Talley's Initial Disclosure Statement, served on

13  January 27, 2012, may have knowledge of certain facts that support this Response.   In

14  addition, Hassan A. Mirza, SVP & CFO of Nammo Talley may possess knowledge of

15  certain facts supporting Nammo Talley's responses to Interrogatories Nos. 31 – 33.

16       37.   IDENTIFY all DOCUMENTS and COMMUNICATIONS that support or

17  RELATE TO YOUR responses to DEFENDANT INSURERS' First Set of Joint

18  Interrogatories.

19  **ANSWER:**

20       In addition to the General Objections above, Nammo Talley objects to this

21  Interrogatory on the grounds that it is vague, seeks to impose and undue burdensome in

22  that it requests Nammo Talley to identify documents to relate to its Responses, and

23  seeks information protected from discovery by the attorney-client privilege.   Nammo

24  Talley further objects to this Interrogatory to the extent it seeks information already

25  known to Defendant Insurers or equally available to Defendant Insurers from sources

26  other than Nammo Talley, including but not limited to information contained in

27

28

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

64

1   pleadings, briefs, documents already produced, previous disclosures and other discovery

2   in this matter.

3         Subject to and without waiving its General and specific objections, Nammo

4   Talley responds that in addition to those documents indentified in each individual

5   interrogatory response, those documents produced in response to Defendant Insurers

6   First Set of Request for Production relate to the Responses set forth herein.

7         DATED this 22nd day of June, 2012.

8                          POLSINELLI SHUGHART PC

9

10                          By: _____

11                            Mitchell J. Klein

                         Anthony W. Merrill

12                            Tiffany J. Andersen

                         CityScape Plaza

13                            One E. Washington St., Ste. 1200

                         Phoenix, AZ 85004

14                            *Attorneys for Plaintiff Nammo Talley, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28              **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1

2
**CERTIFICATE OF SERVICE**

3
    I hereby certify that on June 22, 2012 I served a paper copy of the foregoing document by First Class U.S. Mail on the following:

4

5
Robert S. Murphy
Law Offices of Robert S. Murphy, LLC
1650 North First Avenue

6
Phoenix, AZ 85003
*Attorney for Defendant Allstate Insurance Company*

7

8
Louise M. McCabe  *(Admitted Pro Hac Vice)*
TROUTMAN SANDERS, LLP
11682 El Camino Real, Ste. 400

9
San Diego, CA 92310-2902
*Attorney for Defendant Allstate Insurance Company*

10

11
John Charles Hendricks
MEAGHER & GEER, PLLP
8800 North Gainey Center Dr., Ste. 261

12
Scottsdale, AZ 85258
*Attorney for Defendants Continental Casualty Company*

13
*and Transportation Insurance Company*

14
Steven M. Crane  *(Admitted Pro Hac Vice)*
BERKES CRANE ROBINSON & SEAL, LLP

15
515 South Figueroa Street, Ste. 1500
Los Angeles, CA 90071

16
*Attorney for Defendants Continental Casualty Company*
*and Transportation Insurance Company*

17

18

19

20

21

22

23

24

25

26

27

28
**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1

2

# VERIFICATION

3       I, Hassan Mirza, am the **Sr. Vice President and Chief Financial Officer** for

4   Plaintiff Nammo Talley, Inc. in the above-entitled cause of action.   I have read the

5   Defendants' First Joint Set of Interrogatories propounded to Plaintiff Nammo Talley,

6   Inc. by Defendants Allstate Insurance Company and the CNA Companies, and Talley's

7   Response to those Interrogatories.   I am familiar with the contents of both.   Based on

8   my knowledge, the responses to the Defendants' First Joint Set of Interrogatories are

9   true.

10       I declare under the penalty of perjury under the laws of the State of Arizona that

11   the above-responses are true and correct.

12       DATED: *June 21, 2012*

13

14

                                        Hassan Mirza, Sr. Vice President and CEO
15                                        of Plaintiff, Nammo Talley, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

2826547.1