Anthony W. Merrill (#022598)
amerrill@polsinelli.com
Tiffany J. Andersen (#025269)
tandersen@polsinelli.com
**POLSINELLI PC**
CityScape Plaza
One E. Washington St., Ste. 1200
Phoenix, AZ 85004
Phone: (602) 650-2000
Fax: (602) 264-7033
*Attorneys for Plaintiff Nammo Talley, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nammo Talley, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Allstate Insurance Company (solely as successor in interest to Northbrook Excess and Surplus Insurance Company), *et al.*, <br><br> Defendants. | Case No. 2:11-CV-1007-PHX-SMM <br><br> **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING ALLOCATION** <br><br> (Assigned to the <br> Honorable Stephen M. McNamee) |

Plaintiff Nammo Talley, Inc. ("Talley") moves for summary judgment regarding the allocation of its damages to insurance policies issued by Defendant Allstate Insurance Company (solely as successor in interest to Northbrook Excess and Surplus Insurance Company) ("Allstate"). This motion is predicated on Rule 56 of the Federal Rules of Civil Procedure, and is supported by the memorandum of points and authorities below, Plaintiff's Rule 56.1(a) Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment Regarding Allocation ("SOF"), filed contemporaneously herewith, and the record in this action.

## MEMORANDUM OF LAW

Allstate collected premiums and issued insurance policies to Talley. In return, Allstate expressly promised that once coverage was triggered by an "occurrence" during the periods of its insurance policies Allstate would pay "all sums" of Talley's liability for property damage, up to an individual policy's stated limit. Decades later, Allstate seeks to

1

48338568.1

1  avoid its promise and re-write its insurance contracts by adding new and artificial
2  limitations to excess liability policies nos. 63-300-019 and 63-002-569 (the "Allstate
3  Policies" or "Policies").  Talley seeks this Court's intervention for a simple request: to
4  hold Allstate accountable for the "all sums" coverage it promised Talley under the clear
5  terms of the Policies.

6     Allstate cannot now re-draft its Policies to avoid its plain contractual promise to
7  pay "all sums" resulting from a covered occurrence.  *See, e.g.*, *Manny v. Avemco Ins. Co.*,
8  121 Ariz. 221, 223, 589 P.2d 464, 466 (Ariz. App. 1978) (recognizing that a court
9  cannot "rewrite the policy"); *accord Monsanto Co. v. C.E. Heath Comp. & Liab. Ins. Co.*,
10 652 A.2d 30, 34-35 (Del. 1994) (applying Missouri law), *as clarified on denial of reh'g*,
11 (Del. Jan. 10, 1995) (en banc) ("Once a policy is on the risk, the unambiguous policy
12 language requires the insurance company to pay "all sums" for which the policyholder
13 shall become liable, up to the policy limits."); *Zurich Ins. Co. v. Northbrook Excess &*
14 *Surplus Ins. Co.*, 494 N.E.2d 634, 650 (Ill. App. 1986) (concluding there was nothing in
15 the policy language that permitted a reduction in the triggered policy's responsibility to
16 pay "all sums"); *Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049, 1058 (Ind. 2001)
17 (holding that once an occurrence resulting in the policyholder's liability occurs in the
18 policy period the insurer must indemnify the policyholder for "all sums" the policyholder
19 must pay as a result of that occurrence, subject to policy limits).

20     This case involves Talley's liability for damages from continuous or repeated
21 exposure to unexpected and unintended environmental pollution conditions.  Talley
22 purchased occurrence-based liability insurance policies to alleviate the risk of harm arising
23 from such liability.  Allstate evaluated the risks and, in exchange for premiums, promised
24 to pay "all sums" of Talley's liability if such damage occurred in or continued through the
25 relevant policy period(s)[1], up to the respective policy limit of each Allstate Policy.

---

[1] Courts have found these types of claims to constitute a single, continuous occurrence rather than a series of multiple occurrences or isolated events.  *Associated Aviation Underwriters v. Wood ("AAU")*, 209 Ariz. 137, 158 ¶ 68, 165 ¶ 90, 90 P.3d 572, 593, 600 (App. 2004) ("In cases involving chemical release causing third-party injury over

2

48338568.1

Despite its promise, Allstate now asks the Court to re-write the Policies by injecting a limitation to arbitrarily restrict Talley's coverage. (SOF at ¶¶ 5, 10, 14, 19). Faced with the inevitable liability arising from their "all sums" promise to Talley, Allstate asks this Court to ignore the plain language of the Policies and drastically reduce its coverage obligations. (SOF at ¶ 19). Absent any supporting policy language, Allstate seeks to unilaterally reduce the promised payment of "all sums" of liability to some artificially allocated pro rata share. The Court should not re-write the Policies to create such a fictitious limitation. *See*, *e.g*., *Monsanto Co*, 652 A.2d at 34-35 ("That language defines [the insurer's] duty under its policies as the obligation to pay 'all sums' for which [the policyholder] becomes liable – not a proportionate share"); *Dana*, 759 N.E.2d at 1058 ("there is no language in the coverage grant, including the definitions of 'property damage', 'personal injury' or 'occurrence', that limits [the insurer's] responsibility to indemnification for liability derived solely for that portion of damages taking place within the policy period.").

Talley's coverage under the Policies is not limited by the fact that property damage may have occurred before, during, and after the Allstate Policies' periods. *See, e.g., State v. Cont'l Ins. Co.*, 281 P.3d 1000, 1008 (Cal. 2012), *as modified* (Sept. 19, 2012) ("[T]he policies at issue obligate the insurers to pay all sums for property damage . . . up to their policy limits, if applicable, as long as some of the continuous property damage occurred while each policy was 'on the loss.' The coverage extends to the entirety of the ensuing damage or injury . . . "). Rather, Allstate is liable to provide coverage for "all sums" of Talley's damages from occurrences within the policy period(s). *See Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 948 P.2d 909, 919 n.10 (Cal. 1997) ("The insurer is responsible for the full extent of the insured's liability  . . . , not just for the part of the

---

multiple years, there is coverage under policies in all of the years in which injury occurred.").

3

1  [injury or] damage that occurred during the policy period.") (internal quotations
2  omitted).

3  Indeed, controlling Arizona law directs Allstate to perform its clear contractual
4  promise to pay "all sums" resulting from a covered occurrence up to policy limits. (SOF
5  at ¶¶ 5, 6, 10, 11, 14); *accord Liberty Ins. Underwriters, Inc. v. Weitz Co., LLC* ("*Weitz*"),
6  215 Ariz. 80, 83 at ¶ 8, 158 P.3d 209, 212 (Ariz. App. 2007) ("If the contractual language
7  is clear, we will afford it its plain and ordinary meaning and apply it as written.")
8  (citations omitted).  Allstate had every opportunity to limit its liability to something less
9  than coverage for "all sums" of Talley's damages; Allstate chose not to contract for any
10 such limitation.  *W. Agr. Ins. Co. v. Indus. Indem. Ins. Co. ("Western")*, 172 Ariz. 592,
11 596, 838 P.2d 1353, 1357 (Ariz. App. 1992) ("pro rata clauses . . . limit the insurer's
12 liability to its insured") (citation omitted).

13 If Allstate wished to limited its liability to some portion of its policyholder's
14 liability, then it was required to clearly and explicitly communicate that limitation on
15 coverage to Talley.  *See Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 535, 647
16 P.2d 1127, 1132 (1982) ("If an insurer desires to limit its liability under a policy, it should
17 employ language which clearly and distinctly communicates to the insured the nature of
18 the limitation.").  Here, Allstate failed to limit its liability to some "pro rata" share.
19 Indeed, the Allstate Policies are <u>silent</u> as to any "pro rata" allocation scheme.  To the
20 contrary, however, Allstate clearly and distinctly promised to pay "all sums" of Talley's
21 covered damages.  (SOF at ¶¶ 5, 10, 14).

22 The Court should grant Talley's Motion for Partial Summary Judgment and require
23 Allstate to honor its promise to cover "all sums" of Talley's liability, subject to each
24 policy's individual limit.  Any other result would ignore the plain language of the Policies
25 and impermissibly re-write the insurance contracts.  *See Lawrence v. Beneficial Fire &*
26 *Cas. Ins. Co.*, 8 Ariz. App. 155, 159, 444 P.2d 446, 450 (1968) ("it is not the prerogative
27 of the courts to change or rewrite" an insurance policy when meaning and intent are clear
28 from the policy language).

4

**BACKGROUND**

In cases involving environmental property damage occurring progressively over several years, such as this case, insurers urge that damages be artificially allocated horizontally across policy years. This allocation method, known as "pro rata", finds no support in the language of the policies and merely serves as an unwritten coverage limitation that progressively reduces coverage. In contrast, the "all sums" promise of the insurance policies supports a vertical exhaustion theory whereby the policies of a single time period respond to a loss before the policies of the next time period are tapped. This Motion seeks to enforce Allstate's contract obligation to pay "all sums" per Talley's rights under the express terms of the Policies.

**I.     THE COVERAGE ACTION**

Talley insurance to protect against potential damages from liability arising out of its operations. (SOF at ¶¶ 1-4, 8, 15, 18). Talley is currently legally liable for damages arising out of environmental contamination resulting from historic operations at its Mesa, Arizona facility ("Site"). (SOF at ¶¶ 16, 17). This litigation involves Talley's claim for insurance coverage for those damages which resulted from an "occurrence", as that term is used in the Policies. (SOF at ¶¶ 15, 16). Talley's damages continued through several insurance policy periods, including the policy periods of the Allstate Policies. (SOF at ¶ 17).

**II.     THE POLICIES**

The Policies are successive excess liability policies in effect during Talley's operations at its Mesa, Arizona facility from January 1, 1975 to January 1, 1978. (SOF at ¶¶ 1, 4, 9, 18). Talley is an insured under the Allstate Policies. (SOF at ¶¶ 2-3). The Allstate Policies have substantially the same policy language and share the following features:

**A.     The "All Sums" Promise**

In the Insuring Agreement of each Policy (the portion of the policy that grants coverage to the policyholder), Allstate promised to "indemnify the Insured for all sums

5

which the Insured shall be obligated to pay by reason of the liability . . . imposed upon the Insured by law, or . . . assumed under . . . agreement by the Named Insured . . . for damages on account of . . . Property Damage . . . caused by or arising out of each occurrence . . . ." (SOF at ¶¶ 5, 9).

### B. Subject to "Limits of Liability"

This "all sums" promise is subject to a "limit of liability" clause providing that the insurance company's limit of liability under an individual policy for a single occurrence is capped by the amount stated in the "declarations" of each policy. (SOF at ¶¶ 6, 10).

### C. "Occurrence" Definition

The Allstate Policies generally define "occurrence" as "an accident or event or happening or a continuous or repeated exposure to conditions which unexpectedly and unintentionally result in personal injury, property damage or advertising liability during the policy period, neither expected nor intended from the standpoint of the Insured. . . . All such exposure to substantially the same general conditions existing at or emanating from one premise location shall be deemed one Occurrence." (SOF at ¶ 7).[2]

### ARGUMENT

The Allstate Policies that Talley purchased promise to pay "all sums" for which the policyholder may become liable because of property damage or bodily injury. (SOF at ¶¶ 1-3, 5, 9). Talley simply seeks the benefit of the insurance that it purchased.

No matter what argument Allstate may make to distort the policy language, the Allstate Policies expressly cover Talley's liability for "all sums" the policyholder becomes obligated to pay as damages resulting from an "occurrence," up to the policy limits. (SOF at ¶¶ 5, 9). The Allstate Policies **do not** limit coverage to part of an occurrence, to some quantum of damages resulting in a particular policy period, or to a particular Insurer's

---

[2] The "occurrence" definition of the second Allstate Policy is worded slightly differently, but the meaning is the same. (SOF at ¶ 12).

6

48338568.1

arbitrary or "pro rata" share of damages. (SOF at ¶ 14). The Court should enforce the Policies as drafted.

### SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if the evidence demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Conclusory opinions purporting to support a party's position, or speculative evidence is insufficient to defeat summary judgment. *See, e .g., Thornhill Pub. Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

### IV. THE ALLSTATE POLICIES REQUIRE ALLSTATE TO PAY "ALL SUMS" UP TO POLICY LIMITS.

"[T]he express language of the applicable insurance policies requires the adoption of the all sums allocation scheme in this case." *The Doe Run Res. Corp., v. Certain Underwriters at Lloyd's London*, 400 S.W.3d 463, 474 (Mo. App. 2013). As the California Supreme Court recently explained in an insurance coverage action for environmental damages involving insurance policies with very similar, if not identical, language to the Allstate Policies:

> Under the CGL policies here, the plain "all sums" language of the agreement compels the insurers to pay "all sums which the insured shall become obligated to pay . . . for damages . . . because of injury to or destruction of property . . . ." (*Ante*, at p.4.) As the State observes, "[t]his grant of coverage does not limit the policies' promise to pay 'all sums' of the policyholder's liability solely to sums or damage 'during the policy period.'"
>
> The insurers contend that it would be "objectively unreasonable" to hold them liable for losses that occurred before or after their respective policy periods. But as the State correctly points out, the "during the policy period" language that the insurers rely on to limit coverage, does not appear in the "Insuring Agreement" section of the policy and therefore is neither "logically [n]or grammatically related to the 'all sums' language in the

7

insuring agreement." **The insurers' claim that their indemnity responsibility is limited to damage occurring "during the policy period" would unduly restrict their agreement to pay "all sums" the insured is obligated to pay for damages due to "injury to or destruction of property. . . ." The CGL policy language does not contemplate such a limited result once there is a property damage occurrence that triggers the insurers' indemnity responsibilities for the entirety of the loss**, and a growing number of states have similarly adopted this interpretation of the all sums language.

*Cont'l Ins. Co.*, 281 P.3d at 1007-08 (emphasis added).

Once an injury during the policy period triggers coverage under the Allstate Policies, the scope of the insurance obligation is defined by the unambiguous promise to pay "all sums". *Id.*; *accord Zurich Ins. Co. v. Raymark Indus., Inc.*, 514 N.E.2d 150, 165 (Ill. 1987); *Monsanto*, 652 A.2d at 34-35. Allstate's pro rata allocation argument, by definition, would require this Court to impermissibly read the "all sums" promise out of the Policies.

### A. The Court Must Enforce the Plain Terms of The Allstate Policies As Drafted.

"A contract of insurance is like any other contract." *Lawrence*, 8 Ariz. App. at 159, 444 P.2d at 450. Under Arizona law, the interpretation of an insurance policy's provisions is a question of law for the court to resolve. *See, e.g., Messina v. Midway Chevrolet Co.*, 221 Ariz. 11, 14, ¶ 9, 209 P.3d 147, 150 (Ariz. App. 2008) (citing *Sparks,* 132 Ariz. at 534, 647 P.2d at 1132). Arizona courts interpret insurance policies according to the "plain and ordinary meaning, examining [the language therein] from the viewpoint of an individual untrained in law or business." *See, e.g., Desert Mountain Prop. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 200, ¶ 14, 236 P.3d 421, 427 (Ariz. App. 2010) *aff'd,* 226 Ariz. 419, 250 P.3d 196 (2011) (citing *Messina*, 221 Ariz. at 14, ¶ 9, 209 P.3d at 150); *see also Sparks*, 132 Ariz. at 534, 647 P.2d at 1132 ("the language should be examined from the viewpoint of one not trained in law or in the insurance business").

/ / /

Further, insurance policy provisions must be read as a whole, giving meaning to all terms. *See Nichols v. State Farm Fire & Cas. Co.,* 175 Ariz. 354, 356, 857 P.2d 406, 408 (Ariz. App.1993). Courts first look to the policy language itself to determine and enforce the intent of the parties. *See, e.g., State Farm Mut. Auto. Ins. Co. v. O'Brien*, 24 Ariz. App. 18, 20, 535 P.2d 46, 48 (1975); *Fireman's Fund Ins. Co. v. New Zealand Ins. Co.*, 103 Ariz. 260, 261, 439 P.2d 1020, 1021 (1968) ("[T]he cardinal principle of construction [is] that the intention of the parties as derived from the language [used in the policy] must prevail."). By focusing on the policy language to determine and enforce the intent of the parties, courts are best able to "protect the reasonable expectations of the insured." *See Weitz,* 215 Ariz. at 83 ¶ 8, 158 P.3d at 212 (quotations omitted).

Importantly, "[i]f the contractual language is clear," as it is here, Arizona courts afford the policy "its plain and ordinary meaning and apply it as written." *Weitz*, 215 Ariz. at 83, ¶ 8, 158 P.3d at 212 (citations omitted). Whenever possible, courts must avoid rewriting insurance contracts where the existing terms are sufficient for interpretation. *See Lawrence*, 8 Ariz. App. at 159, 444 P.2d at 450 ("it is not the prerogative of the courts to change or rewrite" an insurance policy when meaning and intent are clear from the policy language); *O'Brien*, 24 Ariz. App. at 20, 535 P.2d at 48 (same) (citing *Lawrence*). Here, the Allstate Policies' unambiguously require an "all sums" allocation. However, even if the policy language were "unclear" or could be "reasonably construed in more than one sense," any such ambiguity must be "construed against the insurer" and in favor of Talley. *See Sparks*, 132 Ariz. at 534, 647 P.2d at 1132.

Courts recognize the need to protect policyholders from hidden coverage limitations or attempted *post hoc* revisions of contractual obligations by the insurers. As a result, Arizona law requires insurers to use policy language that "clearly and distinctly" communicates the nature of any coverage limitation. *See generally Sparks*, 132 Ariz. 529, 535, 647 P.2d 1127, 1133 (citations omitted). The contractual language of Talley's

9

48338568.1

Allstate Policies is clear – Allstate promised to pay "all sums".  (SOF at ¶¶ 5, 9, 14).  Any other result would require this Court to re-write the plain language of the Policies.

### B.	The Plain Language of the Insuring Agreements Requires Allstate to Pay "All Sums" Up to Policy Limits.

To interpret the Allstate Policies, the Court must first look to the policy language. *See, e.g., O'Brien*, 24 Ariz. App. at 20, 535 P.2d at 48; *Fireman's Fund*, 103 Ariz. at 261,439 P.2d at 1021.  Here, coverage for "all sums" is evident from the express language of the Allstate Policies.  In each Policy, the Insuring Agreement at Section I (the coverage grant) provides Allstate's promise to "indemnify the Insured for all sums which the Insured shall be obligated to pay . . . caused by or arising out of each Occurrence." (SOF at ¶¶ 5, 9).  Notably, this coverage promise is not limited to "certain sums" or "part of" the liability spread over the policy periods – but rather expressly states "all sums". Together with other policy provisions, read as a whole, each Allstate Policy provides that Allstate will pay "all sums" which Talley shall become liable for damages as long as the policy is triggered by some property damage that takes place during the policy period. *See, e.g., Aerojet*, 948 P.2d at 919 n.10 ("[O]nce a policy is triggered, the policy obligates the insurer to pay 'all sums' which the insured shall become liable to pay as damages . . . [and] not just for the part of the damage that occurred during the policy period.").

If Allstate truly intended to reduce the limits of its coverage to that portion of losses resulting within each policy period, Arizona law required Allstate to state a "pro rata" assumption of liability in unequivocal terms.  *See Sparks*, 132 Ariz. at 535, 647 P.2d at 1133 ("If an insurer desires to limit its liability under a policy, it should employ language which clearly and distinctly communicates to the insured the nature of the limitation.").  Yet Allstate failed to include any such limitation when it drafted the Policies.  *Id.* at 534, 647 P.2d at 1132 ("Where the language employed is unclear and can be reasonably construed in more than one sense,  . . . such ambiguity will be construed against the insurer."); (SOF at ¶ 14).

/ / /

Indeed, the insuring agreement — which defines the scope of coverage — *does not* limit the scope of the policies' promise to pay "all sums" of Talley's liability up to the policy limits. To glean a lesser promise would require this Court to either ignore or completely rewrite the "all sums" promise in each Policy. Any such revision is unnecessary and improper, given the clear language of the Policies. *See, e.g.*, *Lawrence*, 8 Ariz. App. at 159, 444 P.2d at 450 ("it is not the prerogative of the courts to change or rewrite" an insurance policy when meaning and intent are clear from the policy language); *O'Brien*, 24 Ariz. App. at 20, 535 P.2d at 48 (same) (citing *Lawrence*); *Weitz*, 215 Ariz. at 83, ¶ 8, 158 P.3d at 212 (Arizona courts afford an insurance policy "its plain and ordinary meaning and apply it as written.").

### C. All Relevant Policy Provisions are Fully Consistent With Allstate's "All Sums" Promise.

Allstate's "all sums" promise is further evident from any reasonable interpretation of the Policies as a whole. *See Nichols,* 175 Ariz. at 356, 857 P.2d at 408 (recognizing that insurance policy provisions must be read as a whole, giving meaning to all terms).

#### 1. The "Occurrence" Definition Does not Limit Allstate's Promise to Pay "All Sums" of Liability.

First, the Allstate Policies generally define "occurrence" as "an accident, event or happening including continuous or repeated exposure to conditions which results, during the policy period, in Personal Injury, Property Damage or Advertising Liability neither expected nor intended from the standpoint of the Insured." (SOF at ¶¶ 7, 12). Through the "continuous or repeated" language, the Allstate Policies acknowledge that "occurrences" may result in damages before, during, and after the policy period. *Accord Doe Run Res. Corp,* 400 S.W.3d at 475 ("This [occurrence] definition does not limit the policies' promise to pay all sums of the policy holder's liability solely to damage during the policy period. We must construe the policy as written and cannot rewrite the policy for the parties.").

Therefore, the "occurrence" definition requires only that some damage take place during the policy period to trigger coverage. This "trigger," however, should not be

11

48338568.1

confused with the scope of covered damages under the Allstate Policies. *See, e.g. Montrose Chem. Corp. v. Admiral Ins. Co.*, 686, 913 P.2d 878 (Cal. 1995) (holding that, although the trigger of the duty to indemnify is limited to the policy period, the extent of the duty to indemnify is not); *Cont'l Ins. Co.*, 281 P.3d 1000 (citing *Montrose* with approval); *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 105 (1996) ("[T]he event which triggers an insurance policy's coverage does not define the extent of the coverage. . . . The insurer is responsible for the full extent of the insured's liability . . . ") (internal quotations omitted).

Thus, if a "continuous or repeated exposure to . . . conditions" results in property damage" during the policy period, the "occurrence" definition is satisfied. The insurance policy then applies to that "occurrence." Indemnity coverage for that occurrence is therefore "triggered" and the "all sums" promise applies. (SOF at ¶¶ 5, 7, 9, 12); *see, e.g., AAU* 209 Ariz. at 158 ¶ 68 & 165 ¶ 90, 98 P.3d at 593 & 600. As outlined above, and as supported by numerous jurisdictions across the country, the insuring agreements define the scope of Allstate's promised coverage and broadly require Allstate to pay "all sums" that Talley becomes obligated to pay for damages arising out of each occurrence. *See infra* Part IV.D.

### 2. The Allstate Policies Do Not Contain Any Limitation On The All-Sums Promise.

Notably missing from the Allstate Policies is <u>any</u> pro rata provision or allocation limitation that contradicts the "all sums" promise. (SOF at ¶ 14). Arizona courts have recognized that a "pro rata" or other limited allocation provision is a coverage limitation much like a policy exclusion. *Western*, 172 Ariz. at 596, 838 P.2d at 1357 ("pro rata clauses . . . limit the insurer's liability to its insured") (citation omitted);[3] *Monsanto Co.*,

---

[3] In *Western*, for example, the appellant insurer sued another insurer seeking (*cont.*)

contribution for payment of a fire loss. The "pro rata" clause, which the court found to limit coverage, provided, in relevant part: "This company shall not be liable for a greater proportion of any loss than the amounts hereby insured shall bear to the whole insurance

12

48338568.1

1  652 A.2d at 34 ("The function of a *pro rata* limitation is not to endow coverage, but to
2  limit the obligation of the indemnity . . . Accordingly, a *pro rata* limitation on coverage is
3  a policy *exclusion* . . . ") (emphasis in original).  Here, nothing even approaching a "pro-
4  rata" or limited allocation clause exists in the Allstate Policies, much less in the "clear[]"
5  and "distinct[]" language required by Arizona law.  Allstate cannot, therefore,
6  retroactively apply an artificial pro-rata exclusion to the Allstate Policies.  *Sparks*, 132
7  Ariz. at 535, 647 P.2d at 1133 ("If an insurer desires to limit its liability under a policy, it
8  should employ language which clearly and distinctly communicates to the insured the
9  nature of the limitation.").

10  Allstate contracted to pay "all sums" of Talley's covered damages.  This Court
11  should not create a "pro rata" allocation "exclusion" — which would limit coverage —
12  out of thin air.  Allstate's attempt to distort the clear language of the Policies is merely an
13  unwarranted expression of post-contracting regret; an effort to arbitrarily reduce its
14  contractual obligations.  *See Lawrence*, 8 Ariz. App. at 159, 444 P.2d at 450 ("it is not the
15  prerogative of the courts to change or rewrite" an insurance policy when meaning and
16  intent are clear from the policy language); *O'Brien*, 24 Ariz. App. at 20, 535 P.2d at 48
17  (same) (citing *Lawrence*); *Weitz*, 215 Ariz. at 83, ¶ 8, 158 P.3d at 212 (Arizona courts
18  afford an insurance policy "its plain and ordinary meaning and apply it as written.");
19  *Monsanto Co.,* 652 A.2d at 35 & n.6 ("The majority of courts have held that without a *pro*
20  *rata* clause in the policies, the insurance companies cannot limit their obligations to a *pro*
21  *rata* share or portion of [the policyholder's] liabilities.").  This Court should enforce the
22  Allstate Policies as written.

23          **D.**        **The "All Sums" Promise is Objectively Reasonable Under the Policies, and is Widely Accepted and Enforced.**

24  The D.C. Circuit was one of the first to address the specific "all sums" language of
25  standard-form liability insurance policies.  *See generally Keene Corp. v. Ins. Co. of N.*

---

28  covering the property against the peril involved, whether collectible or not." *Western*, 172 Ariz. at 596, 838 P.2d at 1357

13

48338568.1

*Am.*, 667 F.2d 1034 (D.C. Cir. 1981).  There, the court interpreted policy language that is nearly identical to the coverage promise in the Allstate Policies.  Like the Allstate Policies, the *Keene* policies provided that: "[t]he company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* . . . to which this insurance applies, caused by an *occurrence* . . . ."  *Keene*, 667 F.2d at 1039.  The court interpreted this promise according to its plain meaning, holding that:

> Once triggered, each [CGL] policy covers [the insured's] liability.  There is nothing in the policies that provides for a reduction of the insurer's liability if an injury occurs only in part during a policy period.  As we interpret the policies, they cover [the insured's] entire liability once they are triggered.  <u>That interpretation is based on the terms of the policies themselves.</u>

*Id.* at 1048 (emphasis added).  Numerous jurisdictions have recognized the "all sums" promise in this context.  *See*, *e.g.*, *Cont'l Ins. Co.*, 281 P.3d 1000 (permitting the policyholder to recover up to policy limits of multiple, "stacked," policies); *Hercules, Inc. v. AIU Ins. Co.*, 784 A.2d 481 (Del. 2001); *Raymark*, 118 Ill. 2d 23, 514 N.E.2d 150; *Dana Corp.*, 759 N.E.2d 1049; *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 769 N.E.2d 835 (Ohio 2002); *J.H. France Refractories Co. v. Allstate Ins. Co.*, 626 A.2d 502 (Penn. 1993); *Am. Nat. Fire Ins. Co. v. B&L Trucking & Const. Co., Inc.*, 951 P.2d 250 (Wash. 1998); *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 759 N.W.2d 613 (Wis. 2009); *Doe Run*, 400 S.W.3d at 470.

Recently, the Texas Supreme Court also joined these jurisdictions and rejected "pro rata" allocation under policies containing an "all sums" promise.  *Lennar Corp. v. Markel Am. Ins. Co.*, 413 S.W.3d 750, 755 (Tex. 2013), *reh'g denied* (Dec. 13, 2013).  In *Lennar*, the court rejected the insurer's argument that it was only obligated to pay costs on a pro rata basis for damage that occurred during its policy period, explaining that "coverage extends to the 'total amount' of loss suffered as a result, not just the loss incurred during the policy period."  *Id.* at 758.

Arizona has not explicitly adopted an allocation scheme in the context of an <u>insured v. policyholder</u> insurance recovery lawsuit.  *See infra* Part IV.E.  Nonetheless, given the

14

clear language of the Allstate Policies, Arizona law supports applying the objectively reasonable approach of *Keene* and its progeny to enforce the "all sums" promise.

### E.  The "All Sums" Language Controls Between Policyholder (Talley) and Insurer (Allstate).

The contractual rights and obligations between Talley and Allstate are distinct from any potential "pro-rata" allocation among Allstate and other insurers.  In other words, "[a] pro-rata allocation among insurers does not reduce their respective obligations to their insured."  *Heartland Payment Sys., LLC v. Utica Mut. Ins. Co.*, 185 S.W.3d 225, 232 (Mo. App. 2006), quoting *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 52 P.3d 79, 93 (Cal. 2002).

Here, the Allstate Policies provide coverage for "all sums," and "not just for the part of [Talley's damages] that occurred during the policy period."  *See, e .g., Aerojet*, 948 P.2d at 919 n.10; *see also Cont'l Ins. Co.*, 281 P.3d 1000.  That is the effect of the insurance contract between Talley and Allstate.  In contrast, any "pro rata contribution" Allstate may have "applies only between insurers, and only in the absence of contract.  It therefore has no place between insurer and insured, which have contracted the one with the other."  *Aerojet*, 948 P.2d at 930 (internal citations and emphasis omitted); *see also Lennar* 413 S.W.3d at 759 (explaining that it is "up to insurers who share responsibility for a loss to allocate it among themselves according to their subrogation rights.").

Arizona decisions that touch on allocation of damages only address situations involving multiple insurers after an insured had paid its contractual obligations.  As a necessary predicate, those few decisions are consistent with the principle that "all sums" language controls as between the insured and the insurer.  For example, in *RSUI Indem. Co. v. Assoc. Elec.& Gas Ins. Serv. Ltd.*, Case No. CV 05-2962-PHX-JAT, 2007 WL 1526433 (D. Ariz., May 23, 2007), an excess carrier sought contribution from another excess carrier.  The court found that the parties' "other insurance" clauses were mutually repugnant under Arizona law and ruled that the two excess insurers must contribute to the settlement "pro rata."  *See* 2007 WL 1526433 at *3 (citing *Harbor Ins.*

15

*Co. v. United Servs. Auto. Ass'n*, 114 Ariz. 58, 63, 559 P.2d 178, 183 (Ariz. App. 1976) (in a dispute <u>among three insurers</u> arising out of an automobile accident, holding that two of the policies provide coverage for the occurrence on a "pro rata" basis due to their mutually repugnant "other insurance" policies). Importantly, and unlike here, the lawsuit at issue in *RSUI* occurred <u>after</u> the plaintiff-carrier met its obligation to its policyholder and contributed its full policy limit toward the policyholder's damages.

A recent Arizona Court of Appeals case, *Nucor Corp. v. Emp. Ins. Co. of Wausau*, similarly dealt with only the contribution rights <u>between insurers</u>, not the situation here involving an insurer honoring its contractual promise to indemnify its policyholder for "all sums". *See* 231 Ariz. 411, 296 P.3d 74 (Ariz. App. 2012), *review denied* (Apr. 23, 2013). There, the court explained that the method of allocating defense costs among insurers "is a matter of equitable judicial discretion." *Id.*, 231 Ariz. at 422, ¶ 45, 296 P.3d at 85, citing *Centennial Ins. Co. v. United States Fire Ins. Co.*, 88 Cal. App. 4th 105, 111 (2001) (involving an insurer's action against another insurer to recover contribution for underlying defense costs). The *Nucor* court simply held that insurers could recover defense costs from other insurers through the doctrine of equitable contribution. *Id.* at 423, ¶ 51, 296 P.3d at 86.

*Nucor*, however, also recognized that any right of "contribution" did not extend from the insurer to the policyholder. *Id.* (stating that "[u]nlike the relationship among multiple insurers, the insured and each insurer have an insurance contract that governs their relationship" and reversing the trial court's allocation of costs to the policyholder). Here, the same principles apply. The terms of the Allstate Policies govern the relationship between Talley and Allstate. Those Policies mandate that Allstate pays "all sums" and do not allow for a quasi-contribution/pro rata allocation scheme. Distorting, or ignoring, the terms of the contract to apportion only some limited portion of those sums to Allstate violates Arizona law.

As *Nucor* acknowledges, the underlying trial court relied upon *AMHS Ins. Co. v. Mut. Ins. Co. of Arizona*, 258 F.3d 1090, 1102 (9th Cir. 2001) (Arizona law). Similar to

*RSUI* and *Harbor*, *AMHS* involved an excess carrier's bad faith and contribution lawsuit against the insured's "modified claims made" insurer for coverage during overlapping policy periods. 258 F.3d at 1093-98. There, the court approved of the "policy limits" approach for allocation of coverage <u>as between the insurance companies</u> in the case. *Id.* at 1101-02.

Thus, neither *RSUI* nor *Nucor*, nor the cases that they rely on, in any way limit a policyholder's right to the insurance coverage that it bargained for. These decisions are simply not instructive to Talley's insurance recovery claims against Allstate in this case.[4] Talley is entitled to coverage for "all sums" of its damages under the plain language of the Allstate Policies, consistent with the reasoning of numerous jurisdictions that have squarely addressed this issue.

## F.     Coverage for "All Sums" up to Policy Limits is Equitable.

The only equitable result is to enforce the parties' contracts as drafted. Talley is entitled to the benefits of the insurance coverage it purchased. As evidenced by the language of the Policies, Talley shifted the risk of the very liability it now faces by purchasing occurrence-based liability insurance policies from Allstate over successive policy periods. (SOF at ¶¶ 1-3, 15-18); *Weitz*, 215 Ariz. at 83, ¶ 8, 158 P.3d at 212 ("Courts construe the written terms of insurance contracts to effectuate the parties' intent and to protect the reasonable expectations of the insured.") (internal quotations omitted).

Allstate underwrote Talley's risk and accepted premiums for each Policy. Thus, enforcing the "all sums" promise presents no risk whatsoever of an unfair "windfall" award to Talley. To the contrary, any limitation below policy limits would allow Allstate to escape coverage that it promised to provide. As the court in *Keene* explained:

---

[4] *Nucor*'s reliance on California law in the context of an intra-insurer contribution allocation foreshadows Arizona's likely adoption of the reasoning set forth in *State v. Cont'l Ins. Co.*, 281 P.3d 1000, 1008 (Cal. 2012), *as modified* (Sept. 19, 2012), which based on the plain policy language adopted the "all sums" allocation methodology. *Id.* at 1008 ("[T]he policies at issue obligate the insurers to pay all sums for property damage . . . up to their policy limits, if applicable, as long as some of the continuous property damage occurred while each policy was 'on the loss.'")

17

> For an insurer to be only partially liable for an injury that occurred, in part, during its policy period would deprive [the insured] of insurance coverage for which it paid. With each policy, [the insured] paid for insurance against all liability for bodily injury. The policies do not distinguish between injury that is caused by occurrences that continue to transpire over a long period of time and more common types of injury. Nor do the policies provide that "injury" must occur entirely during the policy period for full indemnity to be provided.

667 F.2d at 1049.

An "all sums" allocation represents the policyholder's (Talley's) expectations, honors Allstate's obligation under the Policies, and reflects the type of damages that triggered Talley's general liability insurance coverage in the first place. *Cont'l Ins. Co.*, 281 P.3d 1000 ("The ['all-sums']coverage extends to the entirety of the ensuing damage or injury . . . and best reflects the insurers' indemnity obligation under the respective policies, the insured's expectations, and the true character of the damages that flow from a long-tail injury."). Allstate collected premiums and sold policies that promised coverage for "all sums" of Talley's damages for "occurrences" during policy periods. Allstate should be held to that promise.

## CONCLUSION

Unsupported by the Policies as drafted, pro rata allocation is merely a *post hoc* invention urged by Allstate to reduce its contractual obligations. The Policies contain no language authorizing proration. The Court should not give into the temptation to re-write the Policies. Thus, Talley respectfully requests that this Court grant Plaintiff's Motion for Partial Summary Judgment Regarding Allocation and enforce Allstate's promise to pay "all sums" of Talley's damages.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

48338568.1

1 | Dated this 3rd day of July, 2014.

**POLSINELLI PC**

By: /s/ Anthony W. Merrill
 Anthony W. Merrill
 Tiffany J. Andersen
 CityScape Plaza
 One E. Washington St., Ste. 1200
 Phoenix, AZ 85004
 *Attorneys for Plaintiff Nammo Talley, Inc.*

48338568.1

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2014 I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office by using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

/s/ *Anthony W. Merrill*

48338568.1